**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harold Leroy JACKSON, aka Wayne Jackson, aka C.K. Wilson, aka Joseph Mazza, Defendant–Appellant.**

No. 91–50822.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1992.

Decided Dec. 14, 1992.

Steven J. Riggs, Asst. Federal Public Defender, San Diego, CA, for defendant-appellant.

Carol C. Lam, Asst. U.S. Atty., argued, and Melanie K. Pierson, Asst. U.S. Atty., on the brief, San Diego, CA, for plaintiff-appellee.

Before: HUG, FLETCHER, and BRUNETTI, Circuit Judges.

HUG, Circuit Judge:

Harold Leroy Jackson appeals part of the restitution ordered by the district court in conjunction with his sentencing for making false claims for tax refunds (18 U.S.C. § 287) and mail fraud (18 U.S.C. § 1341) after pleading guilty to one count of each offense, as charged in Counts 8 and 52 of a 52–count indictment.

The district court sentenced Jackson to six months in custody, three years supervised release, a $2,500 fine, restitution to the Internal Revenue Service ("IRS") in the amount of $596.56 on the fraudulent refund count, and restitution to the IRS for the mail fraud count in the amount of $9,712.14.

The issue on appeal is whether the amount of the restitution ordered was properly calculated on one of the counts to which Jackson pled guilty.

■ The legality of a sentence is reviewed *de novo*. *United States v. Angelica*, 951 F.2d 1007, 1009 (9th Cir.1991). However, an order complying with the statutory framework for ordering restitution is reviewed for an abuse of discretion. *Id.*

## I.

In May of 1991, the IRS began investigating Harold Leroy Jackson after IRS workers had become suspicious of Jackson's activities. The investigation revealed that Jackson was involved in a scheme to defraud the IRS. Jackson obtained the names and social security numbers of deceased individuals and persons who he knew did not file tax returns. He would then submit fake W–2 forms to the IRS using a real employer identification number.

In almost all cases, the fraudulent claims were for tax refunds of $600 or less. Jackson admitted that he had discovered, through his own personal research, that the IRS rarely bothered to question tax returns in amounts less than $600.

To avoid detection by the IRS, Jackson leased numerous mailboxes from various mail forwarding services. Tax returns were filed using these different addresses. The refunds would then come back to Jackson through these mailboxes. Jackson would then endorse the refund checks, and deposit them through an ATM machine to an account that he controlled.

In total, the IRS discovered that Jackson had filed over 80 fraudulent returns between 1984 and 1988, totalling more than $48,000.

On March 19, 1991, a federal grand jury indicted Harold Leroy Jackson on one count of conspiracy to defraud the IRS, in violation of 18 U.S.C. § 371, seven counts of mail fraud in violation of 18 U.S.C. § 1341, and forty-four counts of making false claims for tax refunds in violation of 18 U.S.C. § 287. Jackson entered a plea agreement in which he pled guilty to Count 8, mail fraud, and Count 52, fraudulent tax refund, in exchange for dismissal of all other counts against him.

The district court ordered Jackson to pay restitution on both counts. On appeal, Jackson argues that the district court erred in ordering restitution for the mail fraud offense in Count 8, and erred again when it failed to consider his ability to pay the restitution ordered. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 (1988). Jackson's appeal was timely, and this court has jurisdiction under 28 U.S.C. § 1291 (1988).

## II.

The amount of restitution ordered in conjunction with Jackson's guilty plea to the Count 8 mail fraud offense was derived by calculating the sum of all fraudulent tax returns sent to Jackson via the mailbox that was the subject of that count. In total, 17 checks were sent to Jackson through this mailbox, leased to him by a Mr. Sapudar, the owner of a mail forwarding business. Five of these 17 checks had been the subject of separate fraudulent tax claim counts in Jackson's indictment.

Jackson makes several arguments as to why the restitution order for Count 8 was error. First, he argues that Count 8 did not specify any amount of loss, and that he thereby believed no restitution was to be ordered if he pled guilty to that count. Second, he argues that if restitution was in order, the victim of the mail fraud was not the IRS, but rather Mr. Sapudar, the owner of the mail forwarding service. Since Mr. Sapudar suffered no loss, restitution should not be ordered. Lastly, Jackson argues that even if restitution was justified, and the IRS was, in fact, the victim, the amount ordered by the district court was incorrect because it included checks that were the subject of other counts that had been dismissed pursuant to the plea agreement. For the reasons set forth below we disagree with all of Jackson's arguments.

■ In general, restitution can be ordered in connection with a conviction for mail fraud under the Victim and Witness Protection Act, 18 U.S.C. § 3663 (1988 & Supp. III 1991). However, restitution is not necessary in a mail fraud conviction.

*See United States v. McHenry*, 952 F.2d 328 (9th Cir.1991) (affirming a mail fraud conviction while vacating a restitution order because there was no evidence of loss to the victim), *as amended*, 974 F.2d 1031 (9th Cir.1992).

### A.

Jackson's first argument essentially boils down to an assertion that since Count 8 did not set forth a specific restitutionary amount, he believed that he would not be ordered to pay restitution if he pled guilty to that count. This is really a two-part argument: first, that Jackson did not know of the possibility of restitution being ordered, and second, that a count must specifically set forth the amount of losses.

The evidence supports a finding that Jackson was aware of the fact that restitution could be ordered in conjunction with a guilty plea to Count 8. In the plea agreement, the parties stipulated that damages from Jackson's activities ranged between $40,000 and $70,000. A later clause in the agreement stated that the Government would seek restitution for all losses caused by Jackson. Under the terms of the plea agreement, Jackson agreed that the court would assess a $50 penalty on each count of conviction, and could also order restitution. It seems clear that Jackson did know that an order of restitution was a possibility for any count to which he pled guilty.

▇ Jackson's other contention, that the amount of restitution must be specified in the count of which he was convicted, is also without merit. In support of this argument, Jackson relies primarily on *United States v. Sharp*, 941 F.2d 811 (9th Cir. 1991).

Jackson argues that *Sharp* restricts the Supreme Court ruling in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).[1] In *Hughey*, the Su-

preme Court determined whether a defendant, indicted on multiple counts but convicted on only one count, had to pay restitution for all losses caused by his activity. The Court held that restitution should be limited to losses "caused by the specific conduct that is the basis of the offense of conviction." *Id.* at 413, 110 S.Ct. at 1980.

In *Hughey*, the defendant was indicted on numerous counts of credit card fraud. Many of the credit cards were issued by the same bank. The defendant pled guilty to one count, and the other counts were dismissed. The district court ordered the defendant to pay restitution for the losses caused to the bank from the defendant's use of 21 different cards. *Id.* at 414, 110 S.Ct. at 1980. Most of those cards had been the subject of other counts which had been dismissed. The Supreme Court reversed, holding that Congress' intent was clear to "authorize an award of restitution only for the loss caused by the specific conduct underlying the offense of conviction." *Id.* at 413, 110 S.Ct. at 1980. The Court concluded that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420, 110 S.Ct. at 1984. Therefore, restitution was limited to losses caused by use of the single card which was the subject of the count to which the defendant pled guilty.

This holding was contrary to many holdings of the circuit courts, including the Ninth Circuit. Shortly after *Hughey*, this court, in *United States v. Sharp*, 941 F.2d 811 (9th Cir.1991), overruled its previous law as set out in *United States v. Pomazi*, 851 F.2d 244 (9th Cir.1988). In *Sharp*, the court held that, in light of *Hughey*, restitution in wire fraud schemes is limited to the losses caused by the specific conduct underlying the count to which the defendant pled guilty. *Sharp*, 941 F.2d at 815.

---

1. Both *Hughey* and *Sharp* have been superseded by 18 U.S.C. § 3663(a)(3) (Supp. III 1991), which specifically allows defendants involved in the plea bargaining process to agree to pay restitution in excess of the amount of losses caused by the conduct underlying the count of conviction. *See United States v. Soderling*, 970 F.2d 529, 533 & n. 8 (9th Cir.1992) (noting that

the precise holding of *Hughey* is still good law). The decision in *Sharp* has been overruled in part by new section 3663(a)(2), which provides that a victim for purposes of restitution is any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern. *Id.* at 533 n. 8; 18 U.S.C. § 3663(a)(2) (Supp.III 1991).

Jackson argues that *Sharp* limits *Hughey* by requiring the count itself to specify the amount of restitution. Because no amount was "specified" in Count 8, he argues, no restitution can be ordered under the *Sharp* rule, and he should be ordered to pay only what was contemplated in the plea agreement: in other words, no restitution.

Jackson's interpretation of *Sharp* is wrong. In *Sharp,* the court wrestled with the Supreme Court's decision in *Hughey.* The court faced the issue of whether an entire scheme could be read into one count, justifying a restitution order encompassing losses that were the subject of dismissed counts. *Sharp,* 941 F.2d at 814. The court held that its previous decision in *Pomazi* was overruled by *Hughey,* and that "[e]ven when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction." *Id.* at 815. *Sharp* limited restitution orders to losses caused by the specific conduct of which the defendant had been convicted, not to the amount of losses specifically set forth in the count itself.

## B.

Jackson's second argument is that Mr. Sapudar, the owner of the mail forwarding service, was the only victim in the mail fraud count. However, the Victim and Witness Protection Act construes the term "victim" broadly:

(a)(1) The court, when sentencing a defendant convicted of an offense under this title ... may order, in addition to ... any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

(a)(2) For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a) (Supp. III 1991).

The evidence supports the conclusion that the IRS was harmed by the mail fraud scheme. Use of numerous addresses in furtherance of the crime made detection of fraud more difficult for the IRS. Jackson admitted using the mailboxes for the sole purpose of making detection by the IRS more difficult.

Jackson used the mailboxes as a tool to defraud the IRS just as the defendant in *Hughey* had used the credit cards to defraud the bank. Under the rule of *Hughey,* all losses to the IRS and other victims caused by the use of the mailbox specified in Count 8 are properly included in the restitutionary order.

Although the defendant in *Hughey* had perpetrated numerous offenses with numerous credit cards, he was ordered to pay restitution only for the losses caused by charges made on the credit card that was the specific subject of the count to which he pled guilty. In this case, Jackson made numerous fraudulent tax claims through the use of various "drop-box" addresses. It was not error that Jackson was ordered to pay restitution for all losses caused by the use of the mailbox specified in Count 8.

## C.

Jackson also contends that under *Hughey,* the district court erred in calculating the amount of the Count 8 restitution order. The district court determined the amount of its restitution order by calculating the sum of all fraudulent refund checks that passed through the mailbox that was the subject of Count 8. Of the 17 checks used to determine the amount of restitution, five of them had been the subject of separate counts in the indictment.[2] Jackson argues that since those counts had been dismissed, the checks that were the subject of those dismissed counts could not

---

**2.** Five of the fraudulent refund checks used in making the Count 8 restitution order had been the subjects of five separate counts in the indict-ment: Counts 12, 19, 25, 48, 51, totalling $2,664.65.

be properly included in the Count 8 restitution order.

While *Hughey* does hold that losses attributable to dismissed counts cannot be included in the restitution order, that opinion also suggests that all losses resulting from the specific conduct of which the defendant had been convicted could be properly included in the restitution award. *Hughey*, 495 U.S. at 412–13, 110 S.Ct. at 1980. This case involves elements of both situations.

In support of his argument that the five checks cannot be legally included in the restitution order, Jackson relies primarily on *United States v. Garcia*, 916 F.2d 566 (9th Cir.1990) and *United States v. Wainwright*, 938 F.2d 1096 (10th Cir.1991). However, each of these cases is different from the present case in a fundamental way. In each of these cases, as well as *Hughey* and *Sharp*, the counts that had been dismissed had resulted in losses completely separate from the harm caused by the conduct that was the subject of the count of conviction.

In *Garcia*, there were two counts of bank robbery involving two different banks. The court held that since the defendant was convicted only of one count, he should have been ordered to pay restitution only to the bank that was the victim in that count. The other bank, which was the victim in the dismissed count, received no restitution. *Garcia*, 916 F.2d at 567.

In *Wainwright*, the defendant was indicted on seven counts of fraudulently obtaining money by cashing bad checks at numerous banks. The defendant pled guilty to one count and all other counts were dismissed. The district court's restitution order included not only half of the amount obtained from the bank that was the victim in the count of conviction, but also half of the losses suffered by other banks in the dismissed counts. *Wainwright*, 938 F.2d at 1097. The Tenth Circuit Court of Appeals reversed, holding, "we must invalidate those portions of the district court's restitution order that stem from conduct unrelated to the offense of conviction." *Id.* at 1098.

In every case relied on by Jackson, the situation involves the invalidation of restitution awards that had no relationship to the count of which the defendant was convicted. Here, all 17 checks were involved in the count of which Jackson was convicted.

In *Sharp*, we held that under the command of *Hughey*, restitution orders cannot go beyond the offense of conviction. *Sharp*, 941 F.2d at 815. Even though five of the checks included in the restitution ordered for Count 8 had been the subject of other dismissed counts in the indictment, all five checks were also within the count of conviction. Since all 17 checks comprised the total loss resulting from Jackson's conduct in the Count 8 conviction, all 17 checks were properly included in the restitution order regardless of whether they had been the subject of additional counts in the indictment.

### III.

■ Under the Victim and Witness Protection Act, the court must consider the financial resources of the defendant and his earning ability when ordering restitution. The Ninth Circuit also requires that the district court have information at its disposal with which to make the considerations mandated by 18 U.S.C. § 3664(a). *United States v. Cannizzaro*, 871 F.2d 809, 811 (9th Cir.), *cert. denied*, 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989).

■ However, the Ninth Circuit does not require that the defendant be able to pay in order to justify a restitution award. Imposing restitution on indigent persons is deemed appropriate in the Ninth Circuit because the defendant's future financial status is indeterminable and could change. *United States v. Smith*, 944 F.2d 618, 623 (9th Cir.1991); *see also United States v. Ryan*, 874 F.2d 1052, 1054 (5th Cir.1989). Should the defendant's financial status change for the better, payment of restitution should be made. If, at the end of probation, the defendant demonstrates that he has made a good-faith effort at payment, but is unable to pay the full amount,

he may petition the court for an extension of time or for a remittitur. *See Smith*, 944 F.2d at 624. The district court's order was a proper application of Ninth Circuit authority.

### Conclusion

For the reasons set forth above, we find that the district court did not err in ordering restitution, nor did it err in calculating the amount of restitution. Accordingly, we affirm.

AFFIRMED.