985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sharyn G. CAMPBELL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gilbert R. SERRANO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emmitt L. WILSON, Defendant-Appellant.
 Nos. 92-30024, 92-30033 and 92-30037.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Dec. 7, 1992.
Decided Jan. 27, 1993.
As Amended on Denial of Rehearing April 6, 1993.
 
 Appeals from the United States District Court for the District of Alaska, Nos. CR-91-34-1-RSWL, CR-91-343-RSL and CR-91-34-RSL, Ronald S.W. Lew, District Judge, Presiding.*
 D.Alaska
 AFFIRMED AND REMANDED.
 Before WALLACE, EUGENE A. WRIGHT, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The president of a federal credit union, his business
 
 
 3
 partner, and the credit union's legal counsel were convicted
 
 
 4
 by a jury on charges of credit union fraud. On appeal the
 
 
 5
 defendants argue, inter alia, that the district court abused
 
 
 6
 its discretion in making several evidentiary rulings, the
 
 
 7
 evidence was insufficient to support the convictions, the
 
 
 8
 jury was improperly instructed, and the sentences imposed
 
 
 9
 were unlawful. We affirm the convictions but remand for
 
 
 10
 resentencing as to all appellants.
 
 I. MOTION FOR SUBSTITUTION OF COUNSEL
 
 11
 Campbell first argues that the district court abused its discretion by denying her motion for substitution of retained counsel for appointed counsel. Campbell did not move to substitute counsel until the second week of trial; the district court promptly conducted an ex parte hearing on her request and concluded, after listening to both Campbell and her appointed counsel and having observed them for more than a week at trial, that regardless whether a "personality conflict" existed between them, there was no breakdown in communication. Campbell's appointed counsel was adequately prepared for trial--a point conceded by Campbell herself--while retained counsel was not as well prepared to represent her; and, despite denying the motion, the court offered to let Campbell proceed with retained counsel assisting as adjunct counsel. The district court did not abuse its discretion in denying the motion. See United States v. Castro, 972 F.2d 1107, 1109 (9th Cir.1992).
 
 II. EVIDENTIARY RULINGS
 A. Admission of Evidence of Campbell's Fees
 
 12
 Campbell next argues that the district court erred by allowing the prosecutor to impeach Kirschbaum on redirect examination by reading, over Campbell's objection, a portion of his grand jury testimony in which Kirschbaum said that "She always raped me with the fees." Campbell insists that the evidence was irrelevant and unfairly prejudicial, and the prosecutor's use of the comment improperly put her character at issue. We disagree.
 
 
 13
 The essence of the government's case against Campbell was that she had defrauded the credit union by engaging in a form of "loan sharking," i.e., Campbell obtained, virtually without terms and without putting up any collateral of her own, letters of credit that enabled her to borrow money from banks and then relend those funds to Fielder and Kirschbaum at a substantial profit. In support of its theory the government introduced, without objection from Campbell, evidence showing the contrast between the lack of terms in Campbell's letters of credit and the notes she drew up for Fielder and Kirschbaum, as well as testimony from Kirschbaum and others about the fees Campbell charged them.
 
 
 14
 It was Campbell herself who first raised the question about the reasonableness of her fees when she asked Kirschbaum on cross-examination why he and Fielder had been willing to pay her such large sums. Kirschbaum responded that "[T]o me it was a fair transaction." On redirect the government asked Kirschbaum if he really believed the fees Campbell charged him and Fielder were reasonable. It was only when Kirschbaum insisted that they were fair and that he did not feel that she had "gouged" him that the prosecution impeached Kirschbaum by introducing his prior inconsistent grand jury testimony. The district court did not err by refusing to grant a mistrial based on the introduction of this impeaching evidence.
 
 B. Cross-Examination of Siegel
 
 15
 Serrano and Wilson argue that the district court abused its discretion by restricting the scope of their cross-examination of Siegel regarding his motives for entering into a plea agreement with the government and testifying against them. Our review of the record shows that the district court did not preclude them from asking questions about Siegel's motive for entering into the plea agreement; it merely ruled that Siegel's subjective belief that he had or had not committed a crime was irrelevant. None of the cases cited by the appellants support what appears to be their argument here, viz., that any limitation of cross-examination constitutes a per se violation of a defendant's right to confront his accuser, and our research failed to disclose any such authority. The district court did not err in ruling as it did.
 
 
 16
 C. Admission of Serrano's Unredacted Statements
 
 
 17
 Citing Bruton v. United States, 391 U.S. 123 (1968), Wilson argues that his sixth amendment right to confront his accuser was also violated when Special Agent Scott testified about parts of three interviews he (Scott) had with Serrano that implicated Wilson. With respect to the first statement, Scott's testimony neither mentions Wilson by name nor directly implicates him in any wrongdoing, and in any event involves criminal activity with which only Serrano, not Wilson, was charged. Accordingly, it does not violate Bruton. See Richardson v. Marsh, 481 U.S. 200, 208 (1987); United States v. Sherlock, 962 F.2d 1349, 1361 (9th Cir.) (as amended) ("[T]he rule is limited to facially incriminating confessions"), cert. denied, 113 S.Ct. 419 (1992). The same is true of Scott's second statement which, though mentioning Wilson by name, clearly implicates only Serrano.
 
 
 18
 The third statement, however, has Scott quoting Serrano as saying that "Wilson ... called the shots" because "Wilson had the gold." Although this statement arguably implicates only Serrano, since it came in response to the question of how Serrano viewed his relationship with Wilson, the jury could have interpreted it as also implicating Wilson. Nevertheless, this technical violation of Bruton was harmless beyond a reasonable doubt because of the other overwhelming evidence concerning Wilson's improper loan activities on behalf of Wilco. See United States v. Sutton, 794 F.2d 1415, 1428 (9th Cir.1986).
 
 
 19
 D. Admission of Credit Union Procedures and Legal Opinions
 
 
 20
 The appellants argue that the district court erred by admitting into evidence various NCUA regulations, credit union guidelines, and legal opinions that certain loans violated these regulations and guidelines. More specifically, the appellants contend that the government improperly introduced this evidence, not as background information, but as support for its contention that the appellants' violations thereof constituted criminal misconduct, then improperly buttressed this with opinion testimony tending to show that these violations were knowing and intentional.
 
 
 21
 It appears from the record, however, that the government introduced NCUA regulations and opinion testimony thereon largely in response to the appellants' claims that their actions did not violate any governing regulations or institutional policies, and the court was careful to issue limiting instructions to the jury that such civil violations could not be viewed as evidence of anything other than intent. See United States v. Wolf, 820 F.2d 1499, 1505 (9th Cir.1987), cert. denied, 485 U.S. 960 (1988); accord United States v. Smith, 891 F.2d 703, 710 (9th Cir.1989), amended, 906 F.2d 385 (9th Cir.), cert. denied, 111 S.Ct. 47 (1990); cf. United States v. Musacchio, 968 F.2d 782, 789 (9th Cir.1992) (as amended). Thus, the prosecution's use of credit union policies and procedures to show intent did not run afoul of Fed.R.Evid. 704. See United States v. Castro, 887 F.2d 988, 1000 (9th Cir.1989). Accordingly, the district court's evidentiary rulings in this area were not improper.
 
 III. SUFFICIENCY OF THE EVIDENCE
 
 22
 All three appellants challenge the sufficiency of the evidence to support their convictions. Turning first to Serrano and Wilson, our review of the evidence in a light most favorable to the government leads to the conclusion that any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. See United States v. Wales, 977 F.2d 1323, 1325 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Although the question is somewhat closer with respect to Campbell's case, particularly concerning her argument regarding the impropriety of the $1 million loan commitment, we nevertheless reach the same conclusion.
 
 
 23
 IV. CLOSURE OF COURTROOM DURING READING OF JURY INSTRUCTIONS
 
 
 24
 Prior to reading the jury instructions, the trial judge made the following announcement: "For those of you who are in the audience, if you wish to remain, you may remain, but no one should be entering or leaving the courtroom during the jury instructions." The appellants now argue that this order violated their Sixth Amendment rights and warrants reversal of their convictions.
 
 
 25
 The trial court's order in the instant appeal was neither a total closure nor even a partial closure of the proceedings; it constituted at most a temporary exclusion of those who were not even present to begin with. Although the judge failed to state his reasons for the exclusion on the record, the scope of the exclusion was extremely narrow and the appellants were given the opportunity to be heard. They voiced no objection, and neither did anyone else in the courtroom. Whatever educative value might have been lost by temporarily excluding some member of the audience from watching the reading of the jury instructions was compensated by having a transcript of that reading immediately made available as part of the public record. Accordingly, we conclude that the trial judge's temporary exclusion order does not rise to the level of a constitutional deprivation. See United States v. Sherlock, 962 F.2d at 1356-59.
 
 V. JURY INSTRUCTIONS
 A. Reasonable Doubt
 
 26
 The appellants argue that the jury instruction given on reasonable doubt was improper because, inter alia, it ran afoul of Holland v. United States, 348 U.S. 121, 140 (1954). The short answer to this argument is that the trial court gave the standard Ninth Circuit Model Jury Instruction. See e.g. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1385-86 & nn. 9-11 (9th Cir.1991) (as amended) (distinguishing former Instruction 3.04 from current Instruction 3.03).
 
 B. Recklessness as an Element of Fraud
 
 27
 The appellants also argue that the district court erred by including, as part of its instruction on making a false or fraudulent statement, language equating "reckless indifference" to a statement's truth or falsity with "known to be untrue". We have repeatedly upheld fraud convictions based on a showing of a reckless indifference to the truth. See, e.g., United States v. Gay, 967 F.2d 322, 326 (9th Cir.) (mail fraud), cert. denied, 113 S.Ct. 359 (1992); United States v. Castro, 887 F.2d at 994 (reckless disregard of bank's interests constituted showing of intent to defraud). There was no error.
 
 VI. SENTENCING
 A. Campbell
 
 28
 Campbell asserts two claims of error with respect to the sentence she received: First, the court erred by ordering restitution of $500,000 because she only defrauded the credit union of $101,000 and, in any event, the court failed to consider whether she has the means to pay such a huge indemnity; and, second, she should not have been sentenced consecutively (to concurrent counts 24 and 25) on count 26 because the latter count did not require any proof in addition to what had already been given on the other two counts.
 
 
 29
 Taking Campbell's second argument first, we note that her conviction on count 26 (aiding and abetting false entries in books and records in violation of 18 U.S.C. § 1006) differs in its elements and proof from her conviction on counts 24 and 25 (credit union fraud in violation of 18 U.S.C. § 1344). Accordingly, consecutive sentencing was not improper. See United States v. Laurins, 857 F.2d 529, 542 (9th Cir.1988) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)), cert. denied, 492 U.S. 906 (1989).
 
 
 30
 With respect to the first part of her restitution claim, she was properly charged with and convicted of two separate counts involving criminal wrongdoing that resulted in a nearly $1 million loss to the credit union and the NCUA (count 24, $1 million loan commitment to cover $850,000 letters of credit; count 25, $101,000 advance on that loan commitment; none of which she repaid). There was no error on this point, either. See United States v. Scarano, No. 91-10143, slip op. 13683, 13686 (9th Cir. Nov. 24, 1992) (order amending opinion reported at 975 F.2d 580, 585).
 
 
 31
 However, the second part of Campbell's restitution argument has merit. efectively conceded at oral argument, that the district court not only failed to make the necessary findings to support the ordered $500,000 restitution, but that the amount of restitution required should not exceed the $101,000 Campbell actually received from the credit union. Under these circumstances, the restitution portion of Campbell's sentence must be vacated and remanded for further proceedings. See United States v. Jackson, 982 F.2d 1279, 1284 (9th Cir. 1992) (restitution order cannot go beyond offense of conviction).
 
 B. Serrano and Wilson
 
 32
 Serrano contends, apparently for the first time on appeal, that the district court erred by ordering that he pay restitution of $422,000 because, put simply, his share of any wrongdoing results in numbers that just don't add up to that sum, e.g., his portion of the restitution on the $183,000 loan should be at least partially offset by the value of the Colonial Park lots, allegedly still held as collateral by the NCUA.
 
 
 33
 "Objections to restitution that are not raised in the district court are usually deemed waived." United States v. Clack, 957 F.2d 659, 661 (9th Cir.1992). However, this court will consider the issue if review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; a change in law raises a new issue while an appeal is pending; or the issue is purely one of law. Id. In Clack, the defendant was convicted of violating the Hobbs Act and possession of stolen property. We vacated part of the sentence and remanded, holding that the district court erred in ordering restitution without determining the value of recovered property and deducting it from the total award. Id.
 
 
 34
 Our examination of the record leaves us in some doubt as to whether this information, at least, was properly taken into consideration at Serrano's and Wilson's respective sentencings. Accordingly, those portions of Serrano's and Wilson's sentencings involving the restitution orders must be remanded for clarification or resentencing.
 
 CONCLUSION
 
 35
 Because we find no merit to any of the appellants' remaining arguments, the judgments of conviction are all AFFIRMED. The sentences imposed are REMANDED for proceedings consistent with the above.
 
 
 
 *
 The Honorable Ronald S.W. Lew, District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3