**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Lee MILLS, Defendant–
Appellant.**

No. 92–10245.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1993.

Decided April 20, 1993.

Suzanne A. Luban, Sacramento, CA, for defendant-appellant.

Lisa C. Ridge, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before CHOY, SCHROEDER, and BRUNETTI, Circuit Judges.

CHOY, Circuit Judge:

Appellant Richard Lee Mills pled guilty to bank robbery in January of 1992. The district court ordered him to make restitution to the victim banks, and also ordered that $2,400 seized from Mills at the time of arrest be applied to the restitution obligation. The district court denied Mills' motion brought pursuant to Fed.R.Crim.P. 41(e) seeking the return of the $2,400.[1]

Mills appeals from the denial of his Rule 41(e) motion, arguing (1) that the district court's restitution order was invalid because the court did not consider the financial needs of Mills' child as required by 18 U.S.C. § 3664(a), and (2) that notwithstanding the restitution order, Mills was entitled to lawful possession of the seized money. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 1991, police in Sacramento arrested Mills on charges of bank robbery and seized a bag containing $2,400 in cash. Mills pled guilty to five counts of bank robbery in January 1992. The district court sentenced Mills to fifty-seven months imprisonment and ordered him to make restitution to the victims in the amount of $8,044. The judgment specified that the $2,400 seized from Mills was to be forfeited to the United States government and applied to the restitution obligation.

Mills brought a motion pursuant to Fed.R.Crim.P. 41(e) seeking the return of the

1. Fed.R.Crim.P. 41(e) permits a criminal defendant to move for the return of property seized by the government on the ground that the movant is entitled to lawful possession of the property.

$2,400. The district court found that the money belonged to Mills at the time it was seized, in part because there was insufficient evidence to show that the $2,400 was precisely the same currency stolen from the banks. However, instead of returning the money to Mills, the court denied the Rule 41(e) motion and ordered that the money be applied toward Mills' restitution obligation.[2] Mills appeals from the denial of his Rule 41(e) motion.

## II. DISCUSSION

### A. *Validity of the Restitution Order*

Restitution orders are specifically authorized by the Victim and Witness Protection Act of 1982 ("VWPA"), Pub.L. No. 97–291, 96 Stat. 1248–1258 (codified in part at 18 U.S.C. §§ 3663–3664 (1988 & Supp.1991)). The VWPA was enacted "to ensure that the Federal Government does all that is possible within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant." Pub.L. No. 97–291, 96 Stat. 1249. Toward that end, the VWPA authorizes a sentencing court to order a defendant to make restitution to his victim and sets up the procedure for such an order.

█ Under 18 U.S.C. § 3663, the district court has the authority to issue a restitution order, but is not required to do so. 18 U.S.C. § 3663(a)(1) (Supp.1991). Section 3664(a) provides that in determining whether to order restitution and the amount of restitution, the court "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a) (Supp.1991).

█ Mills contends that the restitution order is invalid because the district court failed to consider the needs of his dependent child. We review a sentence that falls within the statutory limits of the VWPA for abuse of discretion. *United States v. Smith*, 944 F.2d 618, 623 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

█ Although the district court must consider the factors listed in § 3664(a), the court is not required to make findings of fact, *United States v. Cannizzaro*, 871 F.2d 809, 811 (9th Cir.), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989), or even to discuss the factors on the record, *United States v. Grewal*, 825 F.2d 220, 223 (9th Cir.1987). Instead, in reviewing restitution orders, we have required that the record reflect "that the district judge had at his disposal information bearing on the considerations enumerated in section 3664." *Cannizzaro*, 871 F.2d at 811. There must also be some indication that the judge gave thought to the relevant information. *See Smith*, 944 F.2d at 623; *Cannizzaro*, 871 F.2d at 812; *United States v. Ruffen*, 780 F.2d 1493, 1495 (9th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986).

In *Cannizzaro*, we upheld a restitution order because the presentence report contained information on the defendant's financial condition and the district court specifically referred to the report's findings. *Cannizzaro*, 871 F.2d at 812. Likewise, in *Ruffen*, we concluded that a restitution order was proper because the judge had access to a presentence report containing information on the defendant's finances, and also because the defendant's counsel "made an impassioned plea" and "fully argued" the issue of the defendant's inability to pay restitution. *Ruffen*, 780 F.2d at 1495.

As in *Cannizzaro* and *Ruffen*, Mills' presentence report contained information bearing on the § 3664(a) factors, including details on Mills' financial resources, employment history, and his dependent child. As in *Ruffen*, Mills' attorney argued prior to the sentencing hearing that the $2,400 was needed for the care of the child. The judge

2. Since the district court ordered that the $2,400 be used for restitution and not for reimbursement of government legal costs, we do not address Mills' arguments based on 18 U.S.C. § 3006A.

commented on this argument, and asked for additional briefs and evidence. At a subsequent hearing, the judge stated that he had read the additional briefs submitted as well as the presentence report. It is clear that the judge was aware of Mills' financial circumstances and of his dependent child. We conclude that the district judge satisfied the requirements of § 3664(a) and did not abuse his discretion in issuing the restitution order.

## B. *Denial of the Rule 41(e) Motion*

Mills argues that the district court nevertheless should have granted his Fed.R.Crim.P. 41(e) motion because Mills was entitled to lawful possession of the money. We review the district court's interpretation of Rule 41(e) *de novo. In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 855 (9th Cir.1991).

Rule 41(e) provides in part:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant. . . .

Generally, a Rule 41(e) motion is properly denied "if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1061 (9th Cir.1991). A criminal defendant is presumed to have the right to the return of his property once it is no longer needed as evidence, and the burden of proof is on the government to show

"that it has a legitimate reason to retain the property." *Id.* (quoting *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir.1987)). The government may meet this burden by demonstrating "a cognizable claim of ownership or right to possession adverse to that of [the defendant]." *United States v. Palmer,* 565 F.2d 1063, 1065 (9th Cir.1977).

We hold that a valid restitution order under the VWPA gives the government a sufficient cognizable claim of ownership to defeat a defendant's Rule 41(e) motion for return of property, if that property is needed to satisfy the terms of the restitution order.

Under the enforcement provisions of the VWPA, the government acquires a lien against seized property when a district court issues a valid restitution order. Title 18 U.S.C. § 3663 provides that an order of restitution can be enforced by the United States in the manner described in subchapter B of chapter 229 of title 18.[3] 18 U.S.C. § 3663(h)(1)(A) (1988). One of the provisions in subchapter B states that a fine is a lien "upon all property belonging to the person fined" which "arises at the time of the entry of the judgment and continues until the liability is satisfied." 18 U.S.C. § 3613(a) (1988). Thus, a restitution order is enforceable as a lien upon *all* of the defendant's property at the time judgment is entered. It follows that the district court had a legitimate reason to order that the defendant's property already in the government's possession be applied to his restitution obligation. *Cf. United States v. Duncan,* 918 F.2d 647, 654 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991) (affirming district court's order that seized property be used to pay off monetary penalties imposed as part of the sentence).

Mills' reliance on *Palmer,* 565 F.2d at 1064–65, is unpersuasive. In *Palmer,* the

---

**3.** Subchapter B sets up procedures for collection of unpaid criminal fines. 18 U.S.C. § 3611– 3615 (1988 & Supp.1991).

district court denied a defendant's Rule 41(e) motion for the return of money seized at the time of the defendant's arrest for bank robbery. In reversing, this court emphasized that the district court had made no determination of the rightful owner of the money. There was no evidence that the money rightfully belonged to the victim of the robbery, and the government ·had not claimed the money for itself through a forfeiture proceeding. *Id.* at 1064. The court concluded that "in absence of any cognizable claim of ownership or right to possession adverse to that of [the defendant]," the district court should have returned the money to the defendant. *Id.* at 1065.

*Palmer* is distinguishable from the facts of this case because it was decided before the passage of the VWPA and did not involve an order of restitution. The *Palmer* court was concerned about the government's attempts to compensate victims while avoiding any judicial resolution of the defendant's liability to the victims. *See id.* at 1064–65. In this case, there was a judicial resolution of Mills' liability, undertaken pursuant to federal statute. Thus, the holding in *Palmer* does not affect our conclusion that the government acquires a right to possession of seized property once a district court issues a valid restitution order. Since we have determined that the restitution order in this case was valid, the government had a legitimate reason to retain the money. The Rule 41(e) motion was properly denied.

AFFIRMED.

**In re David GOODMAN, d/b/a S.F.D. Imports, Sendo Stores, Brass Discount, Debtor.**

**JOHNSTON ENVIRONMENTAL CORPORATION, Successor to International Packaging Corporation, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**James E. KNIGHT; John A. Knight; Mary Katherine Knight, Individually, and Trustees of the Katherine McClellan Knight Revocable Trust UTA June 2, 1987, Defendants–Appellants–Cross–Appellees.**

**In re David GOODMAN, d/b/a S.F.D. Imports, Sendo Stores, Brass Discount, Debtor.**

**JOHNSTON ENVIRONMENTAL CORPORATION, Successor to International Packaging Corporation; Santa Ana Properties; David Goodman, Plaintiffs–Appellees,**

**v.**

**James E. KNIGHT; John A. Knight; Mary Katherine Knight, Individually, and Trustees of the Katherine McClellan Knight Revocable Trust UTA June 2, 1987, Defendants–Appellants.**

**Nos. 91–55456, 91–55571 and 91–55458.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 18, 1992.

Decided April 23, 1993.

■■■■■■■■■■■■■■■■■■■■■

William G. Malcolm, Malcolm, Cisneros &
Houser, Irvine, CA, Gerard R. Kilroy, How-
ard, Kulik & Chizever, Los Angeles, CA,
William A. Francis, Glendale, CA, for plain-
tiffs-appellees-cross-defendants-appellants.

Peter M. Appleton, Tyre, Kamins, Katz
& Granof, Los Angeles, CA, for defen-
dants-appellants-cross-plaintiffs-appellees.

Before: NORRIS, REINHARDT, and
TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

James A. Knight, John A. Knight, and
Mary Katherine Knight (collectively "the
Knights") own commercial rental property
("the Property") in Santa Ana, California.
David Goodman, a Chapter 11 debtor in
bankruptcy as of September 1, 1988 ("the
Debtor"), was a subordinate sub-sublessee
of a portion of the Property. The Debtor
acquired this leasehold interest from Inter-
national Packaging Corporation ("IPC"),
the predecessor in interest to Johnston En-
vironmental Corporation ("Johnston"). Be-
cause the Debtor's use of the Property
violated various provisions of the Santa
Ana Municipal Code, the City of Santa Ana
threatened the Knights on January 24,
1989, with criminal prosecution. The
Knights eventually responded by sending
Notices to Quit to all lessees and by filing
an unlawful detainer action in Santa Ana
Municipal Court against all intermediate
lessees, but not the Debtor. Prior to so
doing, the Knights by their own admission
had been notified by letter of Goodman's
pending bankruptcy. The bankruptcy
court made a finding of fact that the
Knights and their attorney of record were
put on notice as of January 19, 1990 that
the debtor had filed a petition in bankrupt-
cy. It is also noteworthy that the lease
from the Knights' standpoint was economi-
cally disadvantageous.

In an attempt to accommodate the auto-
matic stay provisions of 11 U.S.C. § 362,
the Knights on February 26, 1990, filed a
unilateral "Stipulation" in bankruptcy
court in which they tried to exempt the
Debtor from the result of their unlawful
detainer action in State court. The bank-
ruptcy court rejected the stipulation, how-
ever, and determined the Knights had vio-
lated the automatic stay provisions of 11
U.S.C. § 362(h) (1988). The bankruptcy
court further concluded, however, that the
violation was not willful. Accordingly, the
Debtor's request for costs and sanctions
was denied. The bankruptcy court perma-
nently enjoined the Knights from pursuing
the unlawful detainer action.

The Knights then appealed to the district
court. The district court upheld the perma-
nent injunction, but reversed the bankrupt-
cy's court's holding that the violations were
not willful. The district court remanded
the action to the bankruptcy court to deter-
mine the amount of damages resulting
from the Knights' violation of the automat-
ic stay. The district court's remand order
noted that the bankruptcy court should
consider the undecided issue of whether a
corporation, i.e. Johnston, has standing to
obtain damages for a violation of the auto-
matic stay.

The Knights appeal the permanent in-
junction. The Knights also appeal the dis-
trict court's holdings that they (1) violated
the automatic stay, and (2) were liable for
damages flowing therefrom. The Knights
claim *inter alia* that the disputed subor-
dinate sublease was not property of the
Debtor's estate. Johnston appeals the dis-
trict court's remand to the bankruptcy
court to determine whether a corporation
has standing to recover damages for a vio-
lation of the automatic stay. We have

jurisdiction of these three consolidated timely appeals pursuant to 28 U.S.C. § 158(d). We conclude the following: (1) The bankruptcy court did not abuse its discretion in refusing to accept the Knights' offer to stipulate that the Debtor's interest in the subordinate sublease would be protected notwithstanding the results of proceedings in State court; (2) the Knights' action to cancel the master lease was a core proceeding; and (3) the disputed subordinate sublease was property of the Debtor's estate. As a result, we agree with the district court that the bankruptcy court's issuance of a permanent injunction against the Knights "from taking any further action on the Notices and/or the Complaint for Unlawful Detainer, except to dismiss it" was proper and within the power of the issuing court. We also find that the Knights willfully violated the automatic stay, but that because the term "individual" in 11 U.S.C. § 362(h) does not include a corporation, the bankruptcy court did not err in refusing to award sanctions. Thus, we affirm the district court in part, reverse the district court in part, and remand for appropriate proceedings consistent with this opinion.

I

■ The Knights belatedly attempted to protect the Debtor from the effects of their action in State court by filing a unilateral "Stipulation." Counsel for the Knights gave as his reason for tendering the stipulation his "experience with Bankruptcy Court," i.e., "when someone comes in and wants relief from a stay where it does apply, that you get held up for six months or nine months or whatever in litigating the issues...." The stipulation was spurned by the Knights' opponents and rejected by the bankruptcy court. An examination of the record indicates the bankruptcy court did not abuse its discretion in so doing. The bankruptcy court specifically concluded, "the balance of hardships tips strongly in favor of the Debtor, IPC and Santa Ana Properties. That is, should the Defendants [Knights] be allowed to proceed with their Complaint and terminate the leases then the Debtor's plan of reorga-

nization will be detrimentally affected and the leasehold interests in the Property, which I find are unique, may be lost." In other words, there is no way of ascertaining how a state court might handle such a unilateral stipulation, and therefore the stipulation might not accomplish its intended purpose. As the bankruptcy court observed, "If [the Knights] terminate the lease, all leases below it fall...." We conclude that the bankruptcy court's handling of this issue fell within the range of its discretion. The Knights could have, and should have, pursued the orthodox remedy: relief from the automatic stay.

II

A.

■ The Knights argue to the effect that the adversary action was not a "core" proceeding but was, at most, a "related" proceeding, and thus the bankruptcy court lacked jurisdiction to resolve the dispute and enter a final order. The Knights assert the dispute should have been resolved in state court as a landlord-tenant issue. Johnston argues the bankruptcy court correctly processed the proceeding to enjoin the Knights as a core proceeding, thus the bankruptcy court had jurisdiction to enter an injunction.

Bankruptcy judges have authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments...." 28 U.S.C. § 157(b)(1) (1988). A non-exhaustive list of examples of core proceedings is set forth in § 157(b)(2) and includes matters involving the administration of the bankruptcy estate, motions to terminate, annul, or modify the automatic stay, and proceedings that affect assets of the bankruptcy estate. *Id.* § 157(b)(2)(A), (G), (O). This court has recently noted that

"Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.... The meaning of 'arising in' proceedings is less clear, but seems to be

a reference to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."

*Eastport Assoc. v. Los Angeles (In re Eastport Assoc.),* 935 F.2d 1071, 1076 (9th Cir.1991) (quoting *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987) (footnotes omitted)).

■ A proceeding is not removed from the jurisdiction of the bankruptcy court solely because the resolution may be affected by state law. 28 U.S.C. § 157(b)(3). If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 916 F.2d 1444, 1450 n. 5 (9th Cir.1990). Determinations regarding the nature and extent of the bankruptcy estate are fundamental functions of the bankruptcy court and would be "core proceedings." *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1165 (9th Cir.1990).

We conclude that these bankruptcy proceedings were "core proceedings" falling within the jurisdiction of the bankruptcy court. The adversary proceeding involved: (1) allegations that the automatic stay was violated, a claim that is entirely dependent upon bankruptcy law for definition; (2) a request to enjoin the Knights from prosecuting their unlawful detainer action which, if it were not for the bankruptcy proceeding, the Knights would be entirely within their rights to pursue in state court; (3) assertions that the Debtor's lease was not property of the estate, a claim that would impact the bankruptcy court's ability to administer the Debtor's estate and approve actions that would impact the subordinate sublease; (4) a state contract claim, the disposition of which would ultimately affect the Debtor's possession of property necessary for a successful reorganization under the bankruptcy provisions; and (5) a request for damages under 11 U.S.C. § 362(h), a cause of action created solely by Title 11.

The entire basis of Johnston's claim revolved around bankruptcy provisions and the Debtor's bankruptcy case, and did not exist independently of Title 11. The adversary proceeding had both "arising under" and "arising in" elements. The claims did not depend on state law for resolution and were significantly affected by the filing of the bankruptcy case. The claims presented would be entirely inappropriate for resolution in any court other than a bankruptcy court. The adversary proceeding was thus properly characterized by the bankruptcy court as a "core proceeding."

It follows from this conclusion that the bankruptcy court had the authority to enter findings of fact and conclusions of law and to render final orders and judgments. The bankruptcy court was not required merely to submit proposed findings and conclusions to the district court, and thus did not err in resolving the case and entering the appropriate orders without consent of the parties.

## B.

■ As to the specific injunction restraining the Knights from pursuing their unlawful detainer action except to dismiss it, we conclude that the injunction is adequately supported by the record and the law. In that respect, we affirm the bankruptcy court's conclusion that the Knights violated the automatic stay provisions of the Code. In so doing, we have considered and found wanting the Knights' argument that "unless Goodman assumed it, the [subordinate] sublease [with IPC] was rejected as a matter of law 60 days after September 1, 1988, and [therefore] it was not property of the estate when the Knights acted." If it was not property of the estate, goes the argument, there could be no violation of the automatic stay.

In that connection, Goodman did file on October 31, 1988, a Petition for Leave to Assume Executory Contract and Extension

of Time to Assume Lease and a Notice of Motion to Assume Executory Contract. This petition asked the bankruptcy court for permission to assume the disputed subordinate sublease with IPC. These documents were served on Santa Ana Properties, but not the Knights. On November 28, 1988, the bankruptcy court entered an order authorizing the requested assumption, and it appears that IPC both before and thereafter honored the lease by accepting and cashing checks for rent from the Debtor.

 Goodman was not obligated to serve the Knights with the petition to assume. The Knights' long-term lease to Santa Ana Properties would have been unaffected whether or not the Debtor successfully assumed the subordinate sublease. Santa Ana Properties was responsible to the Knights for maintaining the property and insuring the lease provisions were complied with. This is amply demonstrated by the Knights' reaction to receiving notification from the City of Santa Ana of violations of the municipal code: the Knights did not directly contact IPC or the Debtor, but notified Santa Ana Properties with a demand that the violations be cured. Thus, there was no substantive reason to serve the Knights, and we find their claim in this regard to be without merit. The subordinate sublease was part of the estate.

### III

### A.

 The Knights next contend the district court erred in reversing the bankruptcy court's denial of sanctions on the ground that the violations of the stay were not willful. The Ninth Circuit has set forth the following standard to determine if a party willfully violated a stay pursuant to 11 U.S.C. § 362(h):

"A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for

damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded."

*Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 482 (9th Cir.1989) (quoting *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989)) (emphasis omitted).

Johnston correctly points out the Knights were aware of the Debtor's bankruptcy petition as well as the automatic stay. IPC's attorney sent the Knights a letter indicating IPC could take no immediate action to cure the code violations because the Debtor had filed a bankruptcy petition and the automatic stay would have to be lifted before IPC could proceed. Notwithstanding this explicit admonition, the Knights thereafter served the Notices and then filed the unlawful detainer complaint seeking to recover possession of the Property. The reason given by the Knights' counsel for his chosen course of action—bankruptcy court is slow—does not help them escape the conclusion that their actions were willful. Although the Knights may not have had the specific intent to violate the automatic stay, the Knights knew of the automatic stay and their actions were intentional, thus satisfying the definition of a "willful" violation of the automatic stay. *See Bloom,* 875 F.2d at 227 (holding knowledge of the bankruptcy petition and action taken thereafter was sufficient to find a "willful" violation of the stay). The district court was correct in reversing the bankruptcy court's holding that the violation was not "willful."

### B.

 Normally pre-petition creditors in Johnston's position shall recover damages under 11 U.S.C. §§ 362(h) and 1109(b) for willful violations of the automatic stay.[1]

---

1. Section 1109(b) provides:
 A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

This is a question of first impression in this circuit. Two of the three circuits that have considered it have concluded "individual" in § 362(h) encompasses corporate entities as well as natural persons. *See Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 329 (3d Cir.1990) ("Although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor."); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir.1986) ("[W]e construe the word 'individual' to include a corporate debtor."). Applying principles of statutory construction enunciated in *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), however, the Second Circuit has concluded "individual" does not include a corporate debtor. *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 184–87 (2d Cir.1990). Lower courts are likewise split. *Compare, e.g., Mallard Pond Partners v. Commercial Bank & Trust Co. (In re Mallard Pond Partners),* 113 B.R. 420, 423 (Bankr. W.D.Tenn.1990) ("[T]he word 'individual' is construed to include a partnership (or corporate) debtor."); *Schewe v. Fairview Estates (In re Schewe),* 94 B.R. 938, 948 (Bankr.W.D.Mich.1989) ("An 'individual' as set forth in § 362(h) may include a corporate entity."); *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications Consultants, Inc.),* 50 B.R. 250, 254 (Bankr.D.Conn.1985) (holding § 362(h) should be construed more broadly than its literal language and should be read in conjunction with all of § 362)

11 U.S.C. § 1109(b) (1988). Thus, Johnston has

standing to press this issue.