24 F.3d 252
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Andres SOTO, Defendant-Appellant.
 No. 93-50558.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 20, 1994.
Decided May 4, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Andres Soto appeals the restitution order imposed as part of his 113-month sentence following pleas of guilty to bank robbery, in violation of 18 U.S.C. Sec. 2113(a), and armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a)(d). Soto contends the district court clearly erred in finding he had the ability to pay $4,727 by the end of the five-year-period of supervised release he was sentenced to serve following his prison term. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 I.
 
 3
 On November 23, 1991, Soto robbed a bank in Westminster, California. On March 24, 1992, Soto robbed a bank in Rancho Cucamonga, California. During the second bank robbery, Soto showed the teller an object which appeared to be a black revolver.
 
 
 4
 On April 8, 1992, Soto was arrested on a state parole violation. Federal agents were able to identify Soto as the robber with the help of Linda Stafford Munoz, Soto's fiance. After Soto completed serving time for the state parole violation he was transferred into federal custody. On April 20, 1993, an indictment was filed in the United States District Court in the Central District of California, charging defendant with three counts of bank robbery, and four counts of armed bank robbery in violation of 18 U.S.C. Secs. 2113(a) & 2113(a)(d), respectively.
 
 
 5
 On May 20, 1993, Soto withdrew his previously entered pleas of not guilty, and pleaded guilty to counts one and six of the indictment pursuant to a plea agreement. The plea agreement provided that the government would dismiss counts two through five, and count seven of the indictment, and recommend a three-point downward adjustment to the offense level for acceptance of responsibility.
 
 
 6
 On July 13, 1993, the United States Probation Office submitted its presentence report finding that, "[g]iven the defendant's lack of assets, anticipated length of incarceration and the seriousness of his heroin addiction, a financial order beyond restitution would appear excessively burdensome." By separate letter dated July 26, 1993, the probation officer recommended defendant be ordered to pay restitution in the total amount of $4,727.
 
 
 7
 The presentence report contained a personal financial statement disclosing a monthly combined income for Soto and his fiance prior to his arrest of $2,800 and monthly expenses totaling $1,730. Soto owes $1,600 as a result of a welding school loan and has no assets other than a 1980 Oldsmobile that was sold for $1,000 after his arrest. Mr. Soto lives with his fiance and a 16 month old child.
 
 
 8
 The district court sentenced Soto to serve 113 months in the custody of the Bureau of Prisons. The court also ordered Soto to pay a total of $4,727 in restitution to the victim banks stating:
 
 
 9
 If the amount of the restitution and penalty assessment is not paid at the commencement of the term of community supervision, Defendant shall pay such remainder as directed by the probation officer.
 
 Earlier, the district court explained:
 
 10
 I wouldn't expect Mr. Soto to pay [the restitution] now, but when he gets out and goes back to work, it seems to me restitution is a part of the supervised release scheme. So I'm going to order the restitution.... I think that once the probation officer--once he's out, sees his income, what kind of job he can hold down, we'll set the rate within an ability--within his ability to pay, but I think it's important to the full recovery of the Defendant that they understand that they've got to make amends. So I'm in favor of restitution in a situation like this.
 
 II.
 
 11
 Soto contends that the district court's finding that Soto had the ability to pay restitution of $4,727 within the five year period of supervised release was clearly erroneous because of Soto's limited income, poor employment record, and lack of education beyond the 10th grade.
 
 
 12
 We review for abuse of discretion an order of restitution that falls within the statutory limits of the Victim and Witness Protection Act of 1982. United States v. Mills, 991 F.2d 609, 611 (9th Cir.1993). The court is not required to make factual findings on the defendant's financial condition before imposing restitution. United States v. Cannizzaro, 871 F.2d 809, 810 (9th Cir.), cert. denied, 493 U.S. 895 (1989). Nonetheless, the record must reflect that the district court had at its disposal information bearing on the defendant's ability to pay. Id.; accord Mills, 991 F.2d at 609.
 
 
 13
 The amount of restitution must be based on "some evidence" that the defendant will be able to pay the amount when required to do so. United States v. Ramilo, 986 F.2d 333, 335 (9th Cir.1993). Although indigency does not preclude imposition of restitution, a defendant who has made a good faith effort at payment but is unable to pay the full amount by the conclusion of his sentence may petition the court for an extension of time or for a remittur. United States v. Jackson, 982 F.2d 1279, 1284-85 (9th Cir.1992); accord United States v. Smith, 944 F.2d 618, 624 (9th Cir.1991). cert. denied 112 S.Ct. 1515 (1992).
 
 
 14
 Here, the district court read the presentence report which indicated that Soto had training as a welder and had sustained gainful employment (hourly wages in excess of 9.00 dollars) over substantial periods of time that were primarily interrupted by his heroin addiction and his incarceration in state penitentiaries. In addition, the presentence report indicated that Soto's monthly combined income is $2,800 and his expenses amounted to $1,730. The district court considered the gravity of Soto's financial situation and, as a result, did not impose any fines.
 
 
 15
 Based on the information before the district court regarding Soto's resources, financial needs, and earning ability, there was no clear error. The record already reflects a net cash flow exceeding $1,000 per month. Successful rehabilitation from heroin addiction would only strengthen Soto's ability to pay the full amount over the five year period required by the court. Soto's condition is not so extreme as was the case for the defendants in United States v. Newman, 6 F.3d 623, 631 (9th Cir.1993) or Ramilo, 986 F.2d, at 336.
 
 
 16
 In any event, as the district court noted, should Soto find, having made a good faith effort at payment, that the restitution order is beyond his means, he may petition the district court for a remittur at the conclusion of supervised release. Jackson, 982 F.2d at 1284-85.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3