**UNITED STATES of America,**
**Plaintiff,**

v.

**Theodore John KACZYNSKI,**
**Defendant.**

**No. CR S–96–259GEBGGH.**

United States District Court,
E.D. California.

March 5, 2004.

Ana Maria Martel, Assistant United States Attorney, Sacramento, CA, for Plaintiff.

John P. Balazs, Law Offices of John P. Balazs, Sacramento, CA, for Defendant.

## ORDER *

BURRELL, District Judge.

Defendant Theodore John Kaczynski moves for the return of property seized as

---

\* This matter was determined to be suitable for decision without oral argument. L.R. 78– 230(h).

evidence of the Unabomb crimes. On June 26, 2003, Kaczynski filed this motion *in propria persona,* but was subsequently appointed counsel, who now represents him. Kaczynski is a federal prisoner and the criminal proceedings against him have terminated. *See United States v. Kaczynski,* 239 F.3d 1108 (9th Cir.2001), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002), *reh'g denied,* 535 U.S. 1043, 122 S.Ct. 1812, 152 L.Ed.2d 667 (2002). He previously pled guilty to the Unabomb crimes in this district and received a life prison sentence. Part of his sentence requires him to pay $15,026,000.00 in restitution; the restitution order remains unsatisfied.[1] (Amended Judgment filed May 6, 1998, at 5.)

This motion was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(3) and Local Rule 72–302(c)(17). On January 8, 2004, the Magistrate Judge filed findings and recommendations ("F & Rs") which notified the parties that any objections to the F & Rs were due within ten days. Both parties filed objections to the F & Rs. For the reasons stated below, the government's objections concerning Rule 41(g) of the Federal Rules of Criminal Procedure and equity are sustained.

## RETURN OF PROPERTY MOTION

■ Ancillary jurisdiction exists over Kaczynski's motion because he pled guilty in this district to several crimes.[2] *Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994). Under federal jurisprudence the motion is "treated as a civil complaint for equitable relief." *Rufu,* 20 F.3d at 65; *see also United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). This is how "[s]uch motions are treated ... even if [they are]

styled as being pursuant to Fed.R.Crim.P. 41[ (g) (formerly Fed.R.Crim.P. 41(e)) ]." *United States v. Martinson,* 809 F.2d 1364, 1367 (9th Cir.1987). The issues are whether Kaczynski has an interest in the property that is paramount to the government's interest in it and, if not, whether equity favors granting his motion despite the government's superior property interest. *United States v. Duncan,* 918 F.2d 647, 654 (6th Cir.1990).

The property Kaczynski seeks returned includes guns, ammunition, tools, a large collection of books, documents he wrote, $32.00 in cash, and miscellaneous items such as "folded papers with chemical residue," "four copper tubes," "wiring," "springs," and a nine-volt battery. (Mot. filed June 26, 2003, Attach. F.)

Kaczynski explains the reason for his motion as follows:

> Note that, in connection with the documents, not only Kaczynski's personal interests are at stake. The public has an interest in knowing the whole truth about Kaczynski's very high-profile criminal case. The documents now held by the government, which Kaczynski will donate to the Special Collections Library of the University of Michigan where they will be available to scholars and researchers, will be of critical importance in revealing the truth about Kaczynski's case.

(Mot. at 46.)

■ The government argues the motion should be denied because Kaczynski cannot establish a right to the property in light of the restitution order and the dis-

---

**1.** The record indicates that the only payment toward Kaczynski's restitution debt is $7,500.00 the government received from the sale of Kaczynski's ownership interest in land located in Montana. (See docket numbers 602, 604, and 607 in CR–S–96–0259 GEB.)

**2.** "The facts underlying Kaczynski's arrest (April 3, 1996) and indictment for mailing or placing sixteen bombs that killed three people, and injured nine others, are well known and [need] not [be] repeat[ed] here." *Kaczynski,* 239 F.3d at 1110.

gorgement provision of his plea agreement. The disgorgement provision states:

**Disgorgement of Future Earnings:** The defendant agrees that he shall disgorge monies paid in whole or in part to him or on his behalf, in return for writings, interviews, or other information disclosed by the defendant, photographs or drawings of or by the defendant or any other type of artifact or memorabilia to the United States Probation Office for restitution or other distribution to the victims of the Unabom events.

(Memorandum of Plea Agreement filed January 22, 1998, at 4.) The $15,026,000.00 restitution portion of Kaczynski's judgment constitutes a lien in favor of the United States on the property at issue. *See Lavin v. United States,* 299 F.3d 123, 127 (2d Cir.2002) (citing 18 U.S.C. § 3613(c)). This lien arose when judgment was entered and continues because the restitutionary liability is unsatisfied. *Id.*

The United States possesses the restitutionary lien on behalf of the victims of the Unabomb crimes. The "restitution order is enforceable as a lien upon *all* of [Kaczynski's] property...." [3] *United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993).

The F & Rs found this lien ineffective against Kaczynski's claimed property interest. It held that "a tax *levy* is necessary before the government is entitled to possession as against the owner," citing *United States v. Fitzen,* 80 F.3d 387, 388 (9th Cir.1996), and that "even if the present lien were to be considered a levy, the ultimate object of the levy is the sale, not the continued possession, of the property." (F & Rs at 7.) The *Fitzen* court held a defendant "is presumed to have the right to the return of his [seized] property," but that the government may overcome the presumption "by demonstrating a cognizable claim of ownership or right to possession adverse to that of [the defendant]." *Fitzen,* 80 F.3d at 388 (citation and quotation marks omitted.) When contesting a defendant's assertion of a right to possess seized property, "[t]he government need not prove that the government itself is entitled to lawful possession: it is sufficient for the government to prove that [the defendant] is not so entitled." *Id.* at 389. The existence "of a tax levy demonstrates a right to possession adverse to that of the defendant," such that a Rule 41(g) motion fails when the property is "subject" to a government "tax levy." *Id.* at 388–89.

The F & Rs' reliance on the "tax levy" construct is misplaced. The need to levy property arises "where a taxpayer's property is held by another." *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). In that situation, "a notice of levy upon the custodian is ... served [which] creates a custodial relationship between the person holding the property and the [Government] so that the property comes into the constructive possession of the Government." *Id.* at 720, 105 S.Ct. 2919. Since the government already has actual possession of the property, it need not resort to a "tax levy" legal fiction to secure possession. Because the government's lien derives from "a valid restitution order [issued] under the [Victim and Witness Protection Act,]" the judgment of restitution "gives the government a sufficient cognizable claim of ownership to defeat [Kaczynski's] Rule 41[(g)] motion...." *Mills,* 991 F.2d at 612. Therefore, the government, not Kaczynski, is "entitled to[, and has,] lawful possession" of the property. *Id.*

3. Kaczynski's arguments concerning forfeiture of property are misplaced. The issue is whether, in equity, Kaczynski's ownership of the property is extinguished by the restitutionary lien.

Kaczynski indicates the lien should be disregarded since the government has not yet sold the property, and has suggested it has no intention of selling it. But the government holds the restitutionary lien on behalf of the victims, not Kaczynski. Because of this lien, Kaczynski is not entitled to the property. *Fitzen*, 80 F.3d at 389. Moreover, Kaczynski lacks standing either to assert the victims' interest in the property or to demand that the property be sold or placed where he wants it displayed. *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 479 (9th Cir.1998) (holding Plaintiffs lacked standing to assert rights of third parties). Therefore, this portion of Kaczynski's motion is rejected because it lacks merit.

■ Kaczynski also argues his motion should be granted because the public has an "interest in knowing the whole truth about [his] very high-profile criminal case." (Mot. at 46.) He seeks to compel the government to give the property to the University of Michigan's library, contending the property "has significant social and historical value not only to the press and public, but also to academic researchers and social historians." (Def.'s Supp. Brief filed October 10, 2003, at 4.) He argues that the government is violating his "First Amendment right to express and disseminate information and ideas to others" by not releasing his property as he desires. (Reply filed November 20, 2003, at 6.)

The government rejoins that forcing it to heed Kaczynski's request would allow Kaczynski to benefit from the notorious celebrity status he acquired entirely because of his Unabomb crimes. (*See generally* Opp'n filed November 10, 2003, at 7.) The government argues his celebrity status as the Unabomber resulted only from the infamy he created through his crimes, since he had no such status prior to his apprehension. (*Id.*) The government indicates granting his motion would assist him

to extol, and gain a measure of profit from, his notoriety, contrary to the disgorgement provision of the plea agreement. (*Id.* at 2.)

Kaczynski counters that the disgorgement provision is inapplicable because its text does not literally apply to his motion. This riposte fails to recognize that in equity the substance of the provision is considered, regardless of its literal application. "Equity looks to the substance rather than the form, [in an endeavor] to prevent injustice." *Kaydon Acquisition Corp. V v. America Central Indus., Inc.*, 179 F.Supp.2d 1022, 1033 (N.D.Iowa 2001). The disgorgement provision exists to prevent Kaczynski from profiting from his crimes.

While Kaczynski does not seek monetary profit, the effect of what he seeks would force the victims of his Unabomb crimes to use their property in a way that could preserve for posterity some evidence of the evils wrought by his facinorous Unabomber actions. While Kaczynski insists this is in the public interest and has nothing to do with the "profit" term in the disgorgement provision, that term is implicated. What he characterizes as a public interest in the property "cannot be quantified or traced to bank accounts," but granting his request would aid him in his apparent endeavor to extol his criminal celebrity status, and this extolment could "'salt[ ] the wounds' of the victims in the same way as financial profit." Gilbert O'Keefe Greenman, *Son of Simon & Schuster: A "True Crime" Story of Motive, Opportunity and the First Amendment*, 18 U. Haw. L.Rev. 201, 227 (1996). Equity does not favor forcing Kaczynski's victims, through the government, to assist him in his effort to display the seized evidence as he desires.

■ Nor does equity favor granting his additional requests that the government

provide him with photocopies of his documents, refrain from disposing of his property, and "provide [him] with all information necessary for resolution of the issue ... of the disposition of [certain] photographs" possessed by his former criminal defense counsel. (*See* Mot. Requests 2, 3, and 6.) Kaczynski also requests that the government "have no more than 30 days from the entry of the court's order within which to sell such property and apply the proceeds to Kaczynski's debts, and to return to Kaczynski all such property not so sold." (*See* Mot. Request 5.) Kaczynski states:

> Included in this property is a .30–06 hunting rifle, which might be worth about $150 (rough guess). I believe that the rest of the property is of negligible intrinsic financial value (though the documents are of great value as sources of information). I have no idea what the property might be worth to collectors due to its "celebrity" value.

(Aff. in Supp. of Mot. For Permission to Appeal In Forma Pauperis ("Aff."), filed August 1, 2003, at 7.) While Kaczynski indicates the "celebrity value" of the property is at issue, the government rejoins that the issue is the "pre-celebrity value" of the property. Specifically, the government argues that "the value of the property ... is the value it had one day prior to Kaczynski's arrest," which is "a time frame prior to any notoriety of Kaczynski for his connection to the criminal activity." (Gov't Objections to F & Rs filed Jan. 30, 2004, at 4–5 and 5 n. 3.)

The property is only valued in equity at its pre-celebrity value. A contrary finding would allow Kaczynski to profit from his criminal celebrity status. Further, Kaczynski lacks standing to dictate what the

victims do with the property. Since Kaczynski still owes over 15 million dollars in restitution and he concedes that the property at issue has negligible intrinsic value, he has not shown why a court sitting in equity should now determine the pre-celebrity value of the property. A court of equity need not unravel matters having a negligible impact on such an astronomical restitution debt.

Kaczynski's First Amendment argument also lacks merit and evidences a misapprehension of the inquiry at issue. The issue is not whether Kaczynski has the right to communicate any idea, but rather whether equity supports his position that he can dictate what the government must do with liened property it lawfully possesses.[4] Plainly, equity does not favor granting Kaczynski's motion. For the stated reasons, Kaczynski's motion is denied.

### APPOINTMENT OF COUNSEL

 In light of the above rulings, the issue of whether Kaczynski should have appointed counsel under 28 U.S.C. § 1915 at public expense is considered. "There is no constitutional right to appointed counsel in a [civil matter]." *Rand v. Rowland,* 113 F.3d 1520, 1525 (9th Cir.1997). "However, in 'exceptional circumstances,' a district court may appoint counsel for indigent civil litigants...." *Id.* When deciding whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits and the ability of the [litigant] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (citation and quotation marks omitted). Exceptional circumstances do not exist: Kaczynski's motion lacks merit and his *pro se* filings reveal he possesses the ability to articulate his

---

**4.** In fact, Kaczynski has demonstrated his ability to communicate his ideas. Kaczynski's "Affidavit in Support of Motion For Permission to Appeal In Forma Pauperis" filed August 1, 2003, indicates he has sent documents to the University of Michigan's library "from time to time." (Aff. at 4.)

958

claims. Therefore, Kaczynski's present attorney's status as appointed counsel under § 1915 is terminated as of the date on which this Order is served.

*CONCLUSION*

For the reasons stated, Kaczynski's motion is denied. Since equity does not favor returning the property to Kaczynski and he lacks standing to dictate what the government does with the property, this matter is dismissed. Therefore, judgment is entered in favor of the United States.

IT IS SO ORDERED.