**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

    v.

THEODORE JOHN KACZYNSKI,
       *Defendant-Appellant.*

No. 04-10158

D.C. No.
CR-96-00259-GEB/
GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
June 16, 2005—San Francisco, California

Filed July 21, 2005

Before: Mary M. Schroeder, Chief Judge,
William C. Canby, Jr. and Michael Daly Hawkins,
Circuit Judges.

Opinion by Judge Hawkins

8585

## COUNSEL

John Balazs, Sacramento, California, for the defendant-appellant.

Ana Maria Martel, Office of the United States Attorney, Sacramento, California, for the plaintiff-appellee.

Christopher B. Durbin (argued and briefed), Cooley Godward, San Francisco, California, and Margaret C. Crosby (briefed), American Civil Liberties Union Foundation of Northern California, Inc., San Francisco, California, for Amici Curiae.

**OPINION**

HAWKINS, Circuit Judge:

This matter comes to us in the form of a request by convicted Unabomber Theodore John Kaczynski for the return of his papers and other property seized pursuant to a search of his Montana cabin in 1996. Kaczynski pled guilty to a series of coldly calculated bombings that resulted in the loss of innocent life and numerous life-altering injuries. The plea agreement that spared Kaczynski his own life includes a restitution order of some $15 million for the benefit of his victims and their families.

Kaczynski principally seeks the return of his writings, which he wishes to donate to the University of Michigan for inclusion in its collection of protest literature. Arguing that Kaczynski should not profit from his criminal notoriety, the government objected to return of the property, claiming that the property was, on the one hand, of negligible value and, on the other, nonetheless needed to satisfy the terms of Kaczynski's restitution order. The government's restitution plan, yet to be reduced to a detailed writing, seems to be: (1) to hold a private sale of Kaczynski's property, (2) ascribe thereby a value to it, and then (3) deposit government (i.e., taxpayer) funds equal to that value in an account for the benefit of Kaczynski's victims and their families. The government would then keep Kaczynski's property, to unknown ends.

Because the government's plan is inconsistent with the purpose of victim restitution, and with our precedent specifying what must be done with a defendant's property once it is no longer needed as evidence, we remand this matter to the district court for the government to propose a detailed, written plan to dispose of the property in question in a commercially reasonable manner calculated to maximize the monetary return to Kaczynski's victims and their families. We also appoint separate pro bono counsel to act as amicus curiae in support of the interests of the victims and their families.[1]

## FACTS & PROCEDURAL HISTORY

In 1996, government agents executed a search warrant on Kaczynski's cabin in rural Montana. The agents seized for potential use as evidence much of Kaczynski's personal property, including everything from "one rock" and a "plastic container with white clumpy powder" to a copy of ELEMENTS OF STYLE and a brown envelope marked "autobiography." Kaczynski has since described the seized property as "of negligible intrinsic financial value," though potentially worth more "due to its 'celebrity' value." A declaration submitted by the government appraised the various items seized as of "no value," "negative value," and "minimal value."

Kaczynski was charged with numerous counts involving the transportation and/or mailing of explosives with the intent to kill, and in 1998 he pled guilty to all charges. Kaczynski's plea agreement specified:

> The defendant agrees that he shall disgorge any monies paid in whole or in part to him or on his behalf, in return for writings, interviews, or other information disclosed by the defendant, including but not limited to access to the defendant, photo-

---

[1]We decline to reach the First Amendment issue Kaczynski and Amici raised.

graphs or drawings of or by the defendant or any other type of artifact or memorabilia to the United States Probation Office for restitution or other distribution to the victims of the Unabom[b] events.

Kaczynski was sentenced to life in prison, and ordered to pay restitution to the specifically identified victims of his crimes in the amount of $15,026,000. Upon the entry of judgment of conviction, a lien arose in favor of the government on all of Kaczynski's property and rights to property, which will last until his restitution debt is satisfied. 18 U.S.C. § 3613(c).[2]

Kaczynski then moved to have his conviction vacated under 28 U.S.C. § 2255, which the district court denied. This court affirmed that denial. *United States v. Kaczynski*, 239 F.3d 1108 (9th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002), (hereinafter *"Kaczynski I"*). The Supreme Court denied Kaczynski's petition for writ of certiorari and his subsequent petition for rehearing, thus concluding Kaczynski's criminal case.

After the Federal Public Defender and Kaczynski both tried and failed to informally secure the return of his property, Kaczynski moved under Federal Rule of Criminal Procedure 41(g)[3] for the return of all property not used within a reasonable time for payment of restitution. He further asked the court to order the government to send his papers to the University of Michigan's Labadie Collection, which houses materials on radical, social and political movements. The government opposed Kaczynski's motion, arguing that Kaczynski should not profit from his notoriety, and that his property, "treated as the belongings of John Doe," would cost more to sell than it is worth.

---

[2]Kaczynski has paid a $650 special assessment, and the government received $7,025 towards restitution by selling Kaczynski's interest in his Montana land, but almost all of Kaczynski's $15 million debt remains.

[3]Rule 41(e) was changed to Rule 41(g) in 2002 and amended for stylistic purposes only.

The magistrate judge recommended that Kaczynski's motion be granted in part, and deemed the government's argument that it needed the property to satisfy the restitution order, but that the property should be appraised absent Kaczynski's notoriety to prevent him from benefitting from his crime, "circular and confusing." The magistrate recommended that the government sell whatever property it desired for restitution purposes, and return the rest to Kaczynski.

The district court, however, rejected the magistrate's Findings and Recommendations and denied Kaczynski's motion. *United States v. Kaczynski*, 306 F. Supp. 2d 952 (E.D. Cal. 2004) (hereinafter "*Kaczynski II*"). The district court held that the judgment lien of restitution gives the government a sufficient cognizable claim of ownership to defeat Kaczynski's motion for return of property. *Id*. at 955 (citing *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993)). The court found that Kaczynski lacked standing to assert the victims' interest in the property or to demand that the government sell or display it. *Id*. at 956. The court also held that Kaczynski was barred from profiting from his crimes, both under his plea agreement and in equity, and defined "profit" to include "his apparent endeavor to extol his criminal celebrity status." *Id*. The court further found that Kaczynski was not entitled even to photocopies of his documents, and that, because the property should be valued at its pre-celebrity value, a "court of equity need not unravel matters having a negligible impact on such an astronomical restitution debt." *Id*. at 956-57.

Kaczynski timely appealed this final order.

### JURISDICTION & STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291, and review the district court's interpretation of Rule 41(g) de novo. *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993). The denial of a motion for return of property is also reviewed de

novo. *United States v. Marshall*, 338 F.3d 990, 993 (9th Cir. 2003).

## ANALYSIS

**[1]** Federal Rule of Criminal Procedure 41(g) provides that "a person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Property seized for the purposes of a trial that is neither contraband nor subject to forfeiture should ordinarily be returned to the defendant once trial has concluded. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1060-61 (9th Cir. 1991).[4] A defendant is indeed presumed to have a right to the return of his property once the property is no longer needed as evidence, and the government has the burden of showing that it has a "legitimate reason to retain the property." *See United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). A "cognizable claim of ownership or right to possession adverse to that of [the defendant]" constitutes a legitimate reason. *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) (internal quotation omitted).

**[2]** In *Mills*, 991 F.2d at 612, we held that a valid restitution order under the Victim and Witness Protection Act ("VWPA") gives the government a cognizable claim of ownership to defeat a defendant's motion for return of property, "if that property is needed to satisfy the terms of the restitution order." We explained that because a restitution order is enforceable as a lien on all of a defendant's property, a court may order that a defendant's property already in the government's possession be applied to his restitution debt. *Id.*[5]

---

[4]Kaczynski does not seek the return of any property that constitutes contraband.

[5]This holding illustrates a misunderstanding by the magistrate judge: while the magistrate correctly noted that a restitution lien is treated as if it were a federal tax lien, 18 U.S.C. § 3613(c), the magistrate incorrectly concluded that "a tax *levy* is necessary before the government is entitled

Kaczynski argued, however, that the restitution lien does not permit the government to retain his property indefinitely. In response, the government responded that it will not keep Kaczynski's property without paying for it, but would rather credit than sell Kaczynski's property because the property must be valued absent Kaczynski's notoriety and so is of negligible value— thus, "the cost of sale . . . would exceed the proceeds." The government further reasoned that it need not sell the property, as it is statutorily permitted to enforce an order of restitution "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii).

**[3]** The government's position is untenable. The restitution order may only defeat Kaczynski's motion for return of property "if that property is needed to satisfy the terms of the restitution order." *Mills*, 991 F.2d at 612. Yet the government argued unequivocally that the property is of negligible value. To accept that appraisal is to conclude that the government did not meet its burden: property of negligible value is by definition not needed to satisfy the terms of a restitution order.[6]

to possession as against the owner." This conclusion would be correct under tax law, *see United States v. Barbier*, 896 F.2d 377, 379 (9th Cir. 1990) (a levy operates as a seizure; a lien "is merely a security interest and does not involve the immediate seizure of property"), but here, as in *Mills*, the government has already lawfully seized the property. *See Kaczynski II*, 306 F. Supp. 2d at 955. Accordingly, a restitution lien may be enough to defeat a defendant's claim of ownership. *See Mills*, 991 F.2d at 612. This mistake is not terribly significant, since the magistrate concluded that even if the lien were treated as a levy, "the ultimate object . . . is the sale, not the continued possession, of the property." A more important ramification of the irrelevance of the tax levy laws is that we may not simply defer to the clear rules 26 U.S.C. § 6335 applies to the sale of seized property, as Kaczynski requests.

[6]In addition, the 1989 Advisory Committee Notes to Rule 41(g) set reasonableness as the standard to be used in ruling on motions for the return of property, and emphasized that "if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *See also Ramsden*, 2 F.3d at 326-27. A corollary might be: if the government's interests would not be satisfied if the property is retained, continued retention is unreasonable.

Moreover, acknowledging that this is so does not create a slippery slope in which a court would have to determine whether property of *little* value would be sufficient: "negligible" is an extreme classification, and here it is the government who has urged its acceptance.

[4] But that valuation is also flawed. The district court held that Kaczynski's property had negligible value because "a contrary finding would allow Kaczynski to profit from his criminal celebrity status," *see Kaczynski II*, 306 F. Supp. 2d at 957, and the government argued that this holding finds support in both contractual and equitable principles. Not so. First, the disgorgement provision in Kaczynski's plea agreement provides that Kaczynski disgorge any money he is paid "in return for writings . . . including . . . memorabilia."[7] While this contract clearly prevents Kaczynski from profiting from the property at issue, it also anticipates that Kaczynski might be compensated (and have to disgorge money paid) for ordinary property transformed into "memorabilia" by virtue of his notoriety.[8]

[5] Second, as to equity, while it is undisputed that a criminal may not profit from his crime, *see*, *e.g.*, *Mutual Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886) (beneficiary who murdered insured cannot collect life insurance proceeds), that situation is not before us. Applying the revenue from the sale of Kaczynski's property, even inflated by his "criminal celebrity status," to his restitution debt would benefit not Kaczynski but the victims of his crimes.[9] Indeed, while two of our

---

[7]Moreover, 18 U.S.C. § 3664(n) provides that a person obligated to provide restitution who receives "substantial resources from any source" while incarcerated is required to apply the value of those resources to his restitution debt.

[8]Kaczynski has also stated that he is willing to execute an agreement barring him from selling any of the seized property should it be returned to him.

[9]*Cf. United States v. O'Connor*, 321 F. Supp. 2d 722, 730 (E.D. Va. 2004) ("Although use of the forfeiture proceeds as partial satisfaction of

sister circuits, in *Lavin v. United States*, 299 F.3d 123, 127 (2d Cir. 2002), and *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990), referred to the application of seized cash to a defendant's sentence as using the property "for [the defendant's] benefit," in neither case was this practice thus barred as violative of equitable principles. This is certainly also true in our own circuit, else our holding in *Mills*, that a court may order a defendant's property already in the government's possession applied to his restitution debt, would be meaningless. Thus, neither contractual nor equitable principles compel a negligible valuation. Indeed, common sense suggests the property would be quite valuable to scholars, archivists, and, unsavory as that prospect might be, collectors.

**[6]** In the probable event that the value of Kaczynski's property is more than negligible, the property is "needed to satisfy the terms of the restitution order," and the government has a cognizable claim of ownership sufficient to defeat Kaczynski's motion for its return. *Mills*, 991 F.2d at 612. Accordingly, the government has some degree of discretion as to how to enforce the restitution lien, per 18 U.S.C. § 3664(m)(1)(A)(ii) (order of restitution may be enforced "by all other available and reasonable means"). Even so, neither its actions to date nor its newly proposed restitution plan are reasonable.

The government has held Kaczynski's property since 1996, and his criminal proceedings ended (with the Supreme Court's denial of his petition for rehearing) in 2002. Though the government has asserted that it "does not intend to keep Kaczynski's property without paying for it," that is precisely what it has done. At a minimum, nothing barred the government from selling the property and providing some compensa-

the restitution order effectively grants defendants a substantial benefit . . . the result in this case is properly viewed . . . not as one in favor of the defendants, but rather, as one in favor of the victims of defendants' criminal activity").

tion to the victims between 2002 and 2003. *Cf. Martinson*, 809 F.2d at 1370 n.5 ("Some courts have indicated that the burden also shifts if the government has held property for an over-long period of time" without beginning a prosecution); *Sovereign News Co. v. United States*, 690 F.2d 569, 577-78 (6th Cir. 1982) ("we can conceive of no legitimate purpose for retaining these documents if the United States contemplates no actual use for them. The government may not keep the copies purely for the sake of keeping them"). Simply sitting on an order of restitution is not a reasonable means of enforcing it.

Going forward, the government proposed for the first time at argument a private "garage sale," guided by the Uniform Commercial Code, which it would hold to determine the property's pre-notoriety value, after which, at taxpayers' expense, it would pay the victims the inevitably nominal sum and thereafter do what it likes with the property. This plan, which has heretofore existed solely in internal governmental conversations, does not defeat Kaczynski's claim to return.

More importantly, the government's "plan" plainly fails to serve the victims and their families, for whom— we must not lose sight— the restitution was awarded in the first place. *See* VWPA, Pub. L. No. 97-291 § 2(a)(2) (1982) ("[a]ll too often the victim of a serious crime is forced to suffer physical, psychological, or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system unresponsive to the real needs of such victim"); *Kaczynski II*, 306 F. Supp. 2d at 956 ("the government holds the restitutionary lien on behalf of the victims"); *United States v. Miguel*, 49 F.3d 505, 509 (9th Cir. 1995) (through VWPA, Congress "attempted to restore restitution to its proper place in federal criminal law by . . . fostering improved monitoring and enforcement procedures . . . The purpose of the Act was to compensate victims of crime").[10]

---

[10]*See also* Lawrence P. Fletcher, *Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability*, 93 YALE L.J. 505, 508 n.11

**[7]** Enforcing the restitution order by reasonable means, *see* 18 U.S.C. § 3664(m)(1)(A)(ii), if nothing else, requires the government to take prompt action to see that the victims are awarded restitution in a commercially reasonable manner calculated to maximize monetary return. Anything less would be inadequate.[11]

Finally, missing throughout this litigation have been the voices of the victims and their families. Though the government purported to represent these individuals, we see nowhere in the record their viewpoints and desires regarding the enforcement of the restitution order, even though its very purpose is to provide financial compensation for their great losses. Accordingly, we appoint separate pro bono counsel to serve as amicus curiae in support of their interests.

## CONCLUSION

**[8]** We remand to the district court, refusing Kaczynski's request that we direct assignment of the matter to a different judge,[12] to give a timely and adequate opportunity for the government to present, and Kaczynski and pro bono amicus to

---

(1984) (VWPA aimed at victim-oriented sentencing practices to ensure "that the prosecutorial, judicial and probation authorities know, and are encouraged to respond to, the victim's monetary damages") (internal citations omitted); Lorraine Slavin & David J. Sorin, *Congress Opens a Pandora's Box — The Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 FORDHAM L. REV. 507, 572 (1984) ("a victim can only receive restitution if courts and probation departments actively monitor restitution payments.").

[11]While it is true that, in general, a restitution order operates for the benefit of the state, *see Kelly v. Robinson*, 479 U.S. 36, 53 (1986), in this case the district court entered a restitution order in favor of four named victims and their families; the government flouts the VWPA by electing to squander property it possesses pursuant to a restitution order rather than selling it to bring in as much money as possible for these victims.

[12]Contrary to Kaczynski's suggestions, we find *no* proof of bias on the part of the district court.

comment upon, a commercially reasonable plan to dispose of the property at issue, the principal purpose of which shall be to maximize monetary return to the victims and their families. If the government fails or refuses to provide such a plan within a reasonable period of time, or if its plan includes a finding of negligible value or results in a nominal, taxpayer-funded contribution to victim restitution, then the district court is directed to return Kaczynski's property to him.[13]

REMANDED for proceedings consistent with the foregoing opinion. The panel will retain jurisdiction over any future appeal from those proceedings.

---

[13]Any effort by Kaczynski to publish or otherwise profit from this property following any return to him will, of course, remain subject to the $15 million restitution lien.