**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

THEODORE JOHN KACZYNSKI, aka
FC,
           *Defendant-Appellant.*

No. 06-10514

D.C. No.
CR-96-00259-GEB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Submitted September 29, 2008*
San Francisco, California

Filed January 9, 2009

Before: Mary M. Schroeder, William C. Canby, Jr., and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Theodore John Kaczynski, Pro Se defendant-appellant.

Ana Maria Martel, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Kelly A. Woodruff, Farella Braun & Martel, LLP, San Francisco, California, for Amici Curiae Unnamed Victims of Appellant.

Steven A. Hirsch, Keker & Van Nest, LLP, San Francisco, California, for Amici Curiae Susan Mosser, Connie W. Murray, Gary B. Wright and Charles Epstein.

**OPINION**

HAWKINS, Circuit Judge:

Appellant Theodore John Kaczynski ("Kaczynski"), also known as the "Unabomber," appeals the district court's order approving the plan (the "Plan") developed, following an earlier remand by this court, to sell or to dispose of Kaczynski's personal property that was seized during the underlying criminal investigation into his bombings. Kaczynski contends: (1) the restitution lien statute, 18 U.S.C. § 3613, is facially unconstitutional and violates the First Amendment; (2) the Plan violates the First Amendment as applied by impinging his freedom of expression and restricting information from the public; and (3) the Plan impermissibly allows credit bids from the victims and allows destruction of "bomb-making materials" instead of returning them to his designee. For the reasons that follow, we affirm the district court's order approving the Plan.

## FACTS AND PROCEDURAL HISTORY

As is well known, Kaczynski was arrested in 1996 and charged with numerous counts involving the transportation or mailing of explosives with the intent to kill, resulting in the death of three people and injuries to nine others. *United States v. Kaczynski*, 239 F.3d 1108 (9th Cir. 2001) ("*Kaczynski I*"). He eventually pled guilty and was sentenced to four consecutive life sentences plus 30 years imprisonment. He was also ordered to pay $15,026,000 in restitution to four named victims (the "Named Victims"). He later unsuccessfully tried to vacate his conviction pursuant to 28 U.S.C. § 2255. *Id.* at 1119.

When investigating Kacyznski's crimes, government agents searched Kaczynski's Montana cabin and seized various items of his personal property for use as evidence. The seized property included papers, books, Kaczynski's writings, guns,

bomb-making materials, and instructions on making bombs using store-bought items. In June 2003, Kaczynski attempted to regain this personal property. He filed a motion requesting the return of any property that had not been sold within a reasonable period of time. The magistrate judge recommended that the government sell any marketable property to pay restitution and return all other items to Kaczynski. Rejecting this recommendation, the district court denied Kaczynski's motion because the judgment lien gave the government a superior ownership interest in Kaczynski's personal property. *United States v. Kaczynski*, 306 F. Supp. 2d 952, 955 (E.D. Cal. 2004) ("*Kaczynski II*"). The district court also concluded that Kaczynski's property was essentially worthless because the property had to be valued prior to "his criminal celebrity status" to prevent Kaczynski from profiting from his crimes. *Id.* at 956-57.

Kaczynski appealed, and we held the government has a cognizable ownership claim in the property but only "if that property is needed to satisfy the terms of the restitution order." *United States v. Kaczynski*, 416 F.3d 971, 974-75 (9th Cir. 2005) ("*Kaczynski III*") (quoting *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993)) (internal quotations omitted). We noted that Kaczynski's property may not be worthless because any increase in the property's value as a result of his notoriety would benefit the victims by increasing the amount of money available for restitution. *Id.* at 975. Concerned about the lack of representation for the victims and their families, we appointed pro bono counsel to serve as amicus curiae to protect their interests in the enforcement of the restitution order. *Id.* at 977.[1] We remanded the matter to the district court "to give a timely and adequate opportunity for the government to present, and Kaczynski and pro bono

---

[1] The court is extremely grateful for the extraordinary efforts of pro bono counsel Steven A. Hirsch, of Keker & Van Nest, LLP, San Francisco, and Kelly A. Woodruff, of Farella Braun & Martell, LLP, San Francisco.

amicus to comment upon, a commercially reasonable plan to dispose of the property at issue, the principal purpose of which shall be to maximize monetary return to the victims and their families." *Id.*

In July 2006, the government submitted a plan to the district court that provided for the sale or disposal of Kaczynski's personal property. *United States v. Kaczynski*, 446 F. Supp. 2d 1146 (E.D. Cal. 2006) ("*Kaczynski IV*"). Specifically, the government would conduct a well-publicized internet sale of Kaczynski's seized property, including personal items, books owned by Kaczynski, and his own writings. At the Named Victims' request, the writings would be redacted to exclude all information that could be used to identify the actual and intended victims and families. In addition, the government proposed that Kaczynski's weapons be sold to the Named Victims for a credit bid of $300. Finally, the government would dispose of the instructions and materials for making bombs. *Id.* at 1149-52.

Over Kaczynski's objections to various aspects of the Plan, the district court approved the government's plan with the exception that the instructions, including recipes and diagrams for making a bomb, were to be returned to Kaczynski's designated recipient.[2] *Id.* at 1155. Kaczynski timely appealed. Kaczynski was initially represented by counsel on appeal, but later sought and obtained permission to represent himself.

## STANDARD OF REVIEW

We review de novo questions of federal constitutional law, *Polykoff v. Collins*, 816 F.2d 1326, 1335 (9th Cir. 1987), as well as questions of statutory construction. *United States v.*

---

[2]Kaczynski had previously designated the University of Michigan to receive his property. The University maintains the Labadie Collection, which houses materials on radical social and political movements. *Kaczynski III*, 416 F.3d at 973.

*Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc). We review for an abuse of discretion the district court's order approving the Plan of sale to satisfy the restitution lien. *Cf. United States v. Stonehill*, 83 F.3d 1156, 1162 (9th Cir. 1996).

## DISCUSSION

## I. First Amendment Facial Challenge

### A. *Waiver/Justiciability*

For the first time on appeal, Kaczynski challenges the facial validity of 18 U.S.C. § 3613, asserting that the restitution lien statute "is unconstitutional to the extent that it authorizes the government to deprive a convict of his First Amendment property . . . ."[3] In general, a party who does not raise an issue

---

[3]The restitution lien statute at issue provides in relevant part:

> **(a) Enforcement.**—The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law . . . , a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . .
>
> . . . .
>
> **(c) Lien.**— . . . [A]n order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title[ ] is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated . . . .
>
> . . . .
>
> **(f) Applicability to order of restitution.**—In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution.

18 U.S.C. § 3613.

before the trial court is prevented from doing so on appeal. *United States v. De Salvo*, 41 F.3d 505, 510-11 (9th Cir. 1994). We may, in our discretion, hear an issue for the first time on appeal "(1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change in law raises a new issue while an appeal is pending, and (3) when the issue is purely one of law." *Jovanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir. 1987) (declining to hear issues raised by the government for the first time on appeal because the issues did not fall within one of these three exceptions).

**[1]** Although Kaczynski characterizes his claim as a purely facial legal challenge, on closer examination it appears that in large part what he seeks is an advisory opinion that § 3613 would be invalid *if applied to him* in particular ways in the future. Reacting to some post-remand comments by the government about the scope of the restitution lien, Kaczynski seems concerned about potential attempts to seize and sell any writing that he creates or receives from others after his conviction, or copyrights to his literary works. The current Plan, however, is strictly limited to the physical originals of the documents previously seized from Kaczynski's cabin. Thus Kaczynski is really asking us to issue a speculative as-applied ruling that would prohibit the government from taking a possible future action.

The Constitution empowers federal courts to hear actual cases and not render advisory opinions. *See United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947); *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240-41 (1937); *see also Hillblom v. United States*, 896 F.2d 426, 429-30 (9th Cir. 1990) (case not justiciable because injury allegations based upon future actions Congress might take to reduce government authority in the Northern Mariana Islands). Kaczynski cannot, therefore, bring a justiciable as-applied claim at the present time based upon the possible future actions of the government.

**[2]** Thus, we will consider Kaczynski's arguments only to the extent they constitute true facial challenges to § 3613. We need not and, indeed, cannot consider the validity of specific applications of the statute which have yet to occur.

B.   *Facial Validity*

**[3]** Section 3613 is invalid under the First Amendment if "it is unconstitutional in every conceivable application[ ] or . . . it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984).

1.   *Every Conceivable Application*

"A facial challenge to a [statute] is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.' " *Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1190 (2008) (citations omitted). In particular, a generally applicable statute is not facially invalid unless the statute "can *never* be applied in a constitutional manner." *Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (drug testing policy not facially invalid because the challenger failed to provide a reason why the policy could not be constitutionally applied to applicants for certain types of jobs).

**[4]** The restitution lien statute assists the government in collecting unpaid restitution orders that have been imposed on those convicted of federal crimes. The statute provides that a lien arises automatically upon entry of judgment against these individuals and may be enforced against all property and

property rights, regardless of the nature of the property. The statute is thus generally applied to all individuals subject to restitution orders, is not dependent upon the discretion of any government officials, and does not vary according to the type of property that is owned by these individuals.[4] Because a restitution lien, like any other tax lien, can be constitutionally applied in many cases, Kaczynski's facial challenge must fail.

Kaczynski urges this court to consider the "facial" validity of the statute only as it applies to his First Amendment property.[5] He argues that the First Amendment aspect of § 3613 can be "severed" from the rest of the statute and held unconstitutional. This argument misunderstands the concept of severance, and conflates as-applied and facial challenges. A court does not sever a statute *prior* to determining whether it is facially valid. Rather, a court will sever a statute when a portion of it is found unconstitutional and that portion can be excised from the statute without altering the statute's intended purpose. *See, e.g.*, *United States v. Jackson*, 390 U.S. 570, 585-90 (1968) (provision authorizing the death penalty severable from the Federal Kidnaping Act because "[i]ts elimination in no way alters the substantive reach of the statute and leaves completely unchanged its basic operation"). In addition, a facially invalid or overbroad statute cannot be severed unless it is susceptible to a narrowing construction using the

---

[4]The broad application of this statute makes sense from a policy perspective because those convicted of federal crimes should not be able to avoid having a lien placed on their property (and possibly paying any restitution) solely because the property has some expressive qualities. *See Alexander v. United States*, 509 U.S. 544, 551-52 (1993) (stating that "a contrary scheme [to the RICO statute that permits forfeiture of all assets] would be disastrous from a policy standpoint, enabling racketeers to evade forfeiture by investing the proceeds of their crimes in businesses engaging in expressive activity").

[5]Kaczynski defines his First Amendment property as that "property that he needs for the exercise of his First Amendment rights of expression, such as literary property (copyrights) and physical property in expressive materials such as documents, papers, etc."

terms contained within it. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). Section 3613 is simply not subject to the type of division Kaczynski urges.[6]

Moreover, despite describing it as a facial challenge, what Kaczynski really claims is that § 3613 might be unconstitutional if applied to First Amendment property, and thus would not be constitutional in every situation. As we recently noted when another plaintiff attempted a similar "facial" challenge, this formulation "would turn *Salerno* on its head." *Lainer*, 518 F.3d at 1150. Kaczynski's challenge likewise fails.

### 2. *Overbreadth*

**[5]** "A statute is facially overbroad when its application to protected speech is 'substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications.' " *Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1136-37 (9th Cir. 2007) (quoting *Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003)). Because the overbreadth must be substantial, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent*, 466 U.S. at 800. In addition, heightened scrutiny is applied to generally applicable statutes only when they regulate conduct that has a "significant expressive element" or when the statutes have "the inevitable effect of singling out those engaged in expressive activity." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986) (enforcement of a public health regulation of general application did not implicate the

---

[6]Kaczynski's reliance on *United States v. Grace*, 461 U.S. 171, 178-80 (1983), to argue that this court could limit its analysis to only First Amendment property is unpersuasive, because the statute involved there was a time, place, and manner restriction actually directed at expressive activity. Moreover, the statute was severable, and the Court concluded that the statute violated the First Amendment only to the extent it applied to the public forum of public sidewalks around the Supreme Court building. *Id.*

First Amendment even though it resulted in the closure of an adult book store).

**[6]** The restitution lien statute is a generally applicable statute that places a lien on all property and property rights of individuals subject to a restitution order. The statute does not burden individuals engaged in First Amendment activities any more than it burdens those engaged in other types of activities. The primary purpose of § 3613 is to compel payment of restitution and not to prohibit any type of speech or expressive conduct. Because it is not directed at any expressive activity and has only an incidental effect on such activity, § 3613 is not constitutionally overbroad. *See, e.g.*, *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) (ordinance forbidding possession of a gun at a specific location not unconstitutional because this conduct did not commonly convey any expressive content); *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (ordinance prohibiting sitting or lying on a sidewalk not facially invalid because lying or sitting are not "integral to, or commonly associated with, expression").

**[7]** Accordingly, § 3613 is facially valid because it is not unconstitutional in all of its applications and is not overbroad.[7]

## II.   First Amendment As-Applied Challenge

**[8]** Kaczynski further argues that the district court's order violates his First Amendment rights with respect to the sale of his personal writings. An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146

---

[7]Kaczynski's brief also contains a claim that he received ineffective assistance of counsel in the district court because his counsel refused to raise the facial challenge to § 3613. As explained above, the facial challenge lacks merit and his counsel was thus justified in declining to raise it.

F.3d 629, 635 (9th Cir. 1998). As discussed above, the restitution lien statute is a generally applicable law that has at most an incidental effect on First Amendment issues. Its application to protected speech will be upheld if the regulation "furthers an important or substantial governmental interest; if the . . . interest is unrelated to the suppression of free expression; and if the incidental restriction . . . is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567-72 (1991) (general indecency law upheld even though it limited expression of completely nude dancing).

Before delving into Kaczynski's specific arguments, it is important to note that most of his as-applied challenges stem from an inaccurate premise — that he does not have and cannot obtain a complete set of copies of the underlying materials that will be sold. This arises from Kaczynski's interpretation of the district court's order, which he views as requiring him to specifically identify the pages of which he has not yet received copies (a task he claims is impossible because he cannot remember everything he has written). The district court's order, however, simply places an affirmative obligation on the government to provide a full set of legible copies to Kaczynski or his representative: "The government shall provide Kaczynski, though [sic] his designated recipient, with any page Kaczynski has not already received in readable form." *Kaczynski IV*, 446 F. Supp. 2d at 1154 n.12. We are confident that the district court can and will ensure compliance with this order prior to any sale of Kaczynski's documents.[8]

A.   *Right to Communicate Impaired without Originals*

Kaczynski argues that the sale of his original writings vio-

---

[8]For example, the district court could permit Kaczynski's designee to compare the photocopied documents to the originals prior to any redactions and before the sale.

lates the First Amendment. Kaczynski claims that his right to communicate the information contained in the papers will be impaired because it will be impossible to establish the authenticity of the photocopies and they will be "of little value."

**[9]** Kaczynski's argument essentially reveals its own flaw — he can still communicate any ideas contained in the documents without the originals, the originals are just *worth more*. He does not explain how his freedom of speech or expression is at all curtailed by receiving copies of his documents (or having copies delivered to his designee). Moreover, he admitted below and in his opening brief that receiving a full set of copies was a less restrictive alternative that would provide him with an alternative channel for communicating his ideas.

**[10]** The First Amendment protects ideas and the freedom to express them. *See, e.g.*, *Roth v. United States*, 354 U.S. 476, 484 (1957) (the First Amendment "was fashioned to assure unfettered interchange of ideas"); *Thomas v. Collins*, 323 U.S. 516, 537 (1945) ("free trade in ideas" includes opportunity to persuade); *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940) (discussing historical importance of freedom of discussion). Kaczynski cites no authority for the proposition that the original pieces of paper on which his ideas were written are independently deserving of constitutional protection. *Cf. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 608-09 (1978) (no First Amendment right to physical originals of audio tapes where reporters received transcripts of tapes and could communicate contents to public if desired). Kaczynski offers instead practical, forensic considerations for why the originals are more valuable, but no explanation as to how his right to free speech or freedom of expression is impinged by their sale.[9] We therefore reject his argument that the sale of the originals violates the First Amendment.

---

[9]Of course, Kaczynski may be otherwise precluded from receiving or communicating such ideas within the maximum security prison in which he is housed, but those considerations are not at issue here.

B. *Redaction*

The approved Plan permits the government to redact from the originals the names of victims and their families, names of other intended victims, and recognizable descriptions of the victims and their injuries. This proposal was made at the request of the Named Victims, whose interests this court directed the district court to consider. *Kaczynski III*, 416 F.3d at 977.

[11] Kaczynski complains that these proposed redactions also hinder his right of expression and result in the suppression of some information that could be of value to the public, both in violation of the First Amendment. As for impeding his right of expression, his argument once again depends on ascribing constitutional significance to the originals of the documents, or on his assumption that he cannot obtain complete copies of the documents. The district court aptly noted that "Kaczynski fails to explain how alterations of the original physical documents, when he possesses exact copies, impairs his ability to communicate his ideas or otherwise violates the First Amendment." *Kaczynski IV*, 446 F. Supp. 2d at 1155. Similarly, with respect to suppressing information from the public, the district court's order is expressly limited to the sale of the physical documents.

[12] Moreover, any diminution in the originals' value is justified because of the importance of excising this information to protect the privacy interests of the victims and intended victims. *See, e.g.*, *United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998) (upholding partial redaction of Kaczynski's psychiatric and competency reports, because court properly balanced privacy interests versus public right to know); *cf. Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1173 (9th Cir. 2000) (discussing privacy interests of survivors under Freedom of Information Act). We directed the district court to take such considerations into account in fashioning a plan for the sale, *Kaczynski III*, 416 F.3d at 977,

and the Plan is a reasonable compromise that permits the victims to hopefully recoup some monetary value without further compromising their privacy or memories of their loved ones. The redactions may affect *value*, but they only affect the original documents, and do not otherwise hinder free expression.

To the extent Kaczynski objects that the government should not be permitted to single-handedly excise the documents without supervision, this can be easily remedied by having the district court review the materials *in camera* and approve the redactions to ensure they correspond to and do not exceed the descriptions in the approved Plan.

C. *Conclusion*

[13] The lien statute and the court's order approving the Plan for enforcement of that lien further the important governmental interest of providing compensation to crime victims without further invasion of their privacy or harm to the public; the government's interest is unrelated to the restriction of free expression, and the incidental effect on expression from selling redacted originals but providing the author with complete copies is no greater than essential to further that interest because he is not otherwise precluded from communicating the ideas expressed therein. *See O'Brien*, 391 U.S. at 377. We therefore hold that the lien statute, as applied here through the approved Plan, does not violate Kaczynski's First Amendment rights.

## III.   Other Objections to the Plan

A.   *Return of Derivative Contraband*

The Plan excludes from the sale a list of bomb-making materials seized at Kaczynski's home. The government contends Kaczynski cannot lawfully possess these materials and plans to dispose of them instead.

**[14]** Kaczynski first asserts that the district court incorrectly placed the burden on him to prove that he is lawfully entitled to possession of the seized property, by relying on a case in which the defendant sought the return of property while the criminal case was still proceeding. *See Kaczynski IV*, 446 F. Supp. 2d at 1153 (citing *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987)). As Kaczynski correctly states, in cases in which the property is no longer needed for evidentiary purposes, we have noted that "[t]he person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).

**[15]** Ultimately this distinction makes little difference, however, because the government has successfully rebutted Kaczynski's presumptive right to return of the property. After Kaczynski objected below, the government submitted a detailed document describing each of the 100 items it had labeled "bomb-making materials," with an explanation as to why the FBI believed Kaczynski had used or intended to use the substances to create illegal destructive devices.[10] This submission is sufficient to rebut Kaczynski's claim that he ever lawfully possessed the materials, as he offers no innocent explanation to counter it. *See United States v. Dean*, 100 F.3d 19, 20-21 (5th Cir. 1996) (government successfully rebutted defendant's presumptive right to return of property where a convicted robber sought return of $6,000 found in his possession along with $41,000 bearing bank labels, but offered no credible explanation for the presence of the unmarked cash, and was unable to distinguish it from the robbery money or otherwise show that he had lawfully possessed it).

---

[10]Individually innocent materials can become contraband when combined or are intended to be combined to produce such weapons. *See United States v. Lussier*, 128 F.3d 1312, 1314-15 (9th Cir. 1997).

Kaczynski contends, however, that he (or his designee) is prohibited only from possessing items that are "per se" contraband — that is, materials that, without more, are illegal to possess. He contends the materials listed are instead "derivative" contraband — items that may be lawfully possessed but became unlawful due to their use or intended use.

**[16]** Although Kaczynski emphasizes that many listed items are not "per se" contraband, this argument does not get him as far as he hopes, because the court is entitled to prohibit him from possessing derivative contraband as well. A motion such as Kaczynski's for the return of his property is a motion in equity, and "the owner of the property must have clean hands." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005); *see also United States v. Felici*, 208 F.3d 667, 670-71 (8th Cir. 2000) ("The doctrine of unclean hands is an equitable doctrine that allows a court to withhold equitable relief if such relief would encourage or reward illegal activity."). Thus, even if the items sought to be returned could somehow be construed as innocent in and of themselves, the motion could be denied if such items had been utilized or intended to be utilized for illegal purposes. *Felici*, 208 F.3d at 671 ("[I]t makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized."). Kaczynski similarly has unclean hands and should be denied the right to possess or direct the disposition of these otherwise innocent materials. *Howell*, 425 F.3d at 974.

**[17]** For these reasons, the district court acted well within its discretion by ordering the materials not be returned to Kaczynski or his designee.

B.   *Sale to Victims on Credit-bid*

Kaczynski also challenges the Plan's provision that the victims can purchase his firearms on a credit-bid and also credit-bid on other personal items that do not sell in the internet auc-

tion. He argues that a credit bid is impermissible because it would not result in any *monetary* gain for the victims, and he was ordered to pay the victims monetary restitution. He claims this type of bid also contravenes our earlier order, which directed the district court to maximize the monetary return for the benefit of the victims. *See Kaczynski III*, 416 F.3d at 977.

The district court rejected this argument, noting that although our prior opinion indicated the sale's principal purpose was to maximize monetary return, we also directed the court to consider the viewpoints and desires of the Named Victims, who had expressed an interest in purchasing both personal items that did not sell as well as Kaczynski's firearms (which the Plan proposes not selling at all). *See Kaczynski IV*, 446 F. Supp. 2d at 1153 (citing *Kaczynski III*, 416 F.3d at 977).

[18] The district court properly noted that an order of restitution may be enforced by all "available and reasonable means." *Id.* at 1152-53 (quoting 18 U.S.C. § 3664(m)(1)(A)(ii)). The court further explained that Fed. R. Civ. P. 69(a), which governs enforcing a monetary judgment, directs that the court follow "the practice and procedure of the state in which the district court is held." *Id.* at 1153. Under California law, a judgment creditor may credit-bid on property that is subject to a judgment lien. *Id.*; Cal. Code Civ. P. § 701.590(b).[11]

[19] Kaczynski does not seem to dispute that the credit-bid process is *available* under California law, but argues it is not

---

[11]Cal. Code of Civ. Pro. § 701.590(b) provides:

> The judgment creditor may bid by giving the levying officer a written receipt crediting all or part of the amount required to satisfy the judgment, except that the levying officer's costs remaining unsatisfied . . . shall be paid in cash or by certified check of cashier's check.

a *reasonable* means to enforce the restitution lien, because it yields no monetary gain to the victims. However, as the district court properly noted, our prior decision directed the court to consider not only maximizing value but also the interests of the victims.[12] A credit-bid does not violate the letter or spirit of our decision, which contemplated a balancing of such interests. The district court understandably concluded that a credit-bid was a reasonable means to enforce the lien because the personal property that did not sell might still have value to the victims. And, of course, Kaczynski still gains a benefit as well, by having the amount of restitution owed reduced accordingly.

**[20]** Similarly, the credit-bid on Kaczynski's firearms is also available and reasonable. The victims expressed a desire that these weapons not be sold, and understandably gain some value in knowing they will not be used to injure others. Selling the guns to the victims (at twice Kaczynski's original declared value) is also reasonable because the guns could not simply be auctioned like ordinary personal property. Rather, as the government explains in the Plan, selling firearms requires a special license and verification of the non-felony status of the buyer, and the government represented to the district court that none of the online auctioneers that contract with the U.S. Marshall have the ability to sell firearms.[13]

## IV.   Amicus Considerations

---

[12]*Kaczynski III* also noted that the government had "some degree of discretion" in deciding how to enforce the lien. 416 F.3d at 976.

[13]Kaczynski also argues that credit-bidding by the victims is impermissible because the lien is held by the United States. This argument is made for the first time on appeal and we will not consider it. We note, however, that "the government holds the restitutionary lien on behalf of the victims." *Kaczynski III*, 416 F.3d at 976 (quoting *Kaczynski I*, 306 F. Supp. 2d at 956). Thus, even assuming California law requires the credit bid to be made by the lienholder rather than by the underlying beneficiaries, nothing appears to preclude the United States from making a credit-bid on their behalf.

With the court's thanks to pro bono counsel for both the Named and Unnamed Victims for their participation in this difficult case, we have reviewed and carefully considered the amicus briefs filed on behalf of both groups of victims. The Named Victims generally support affirming the district court opinion, adopt the government's arguments, and offer additional arguments to refute Kaczynski's First Amendment claims. The Unnamed Victims, however, disagree with the decision to sell the remaining property, and contend that the district court decision only takes into account the desires of the Named Victims. The Unnamed Victims would prefer to see the property donated or destroyed to minimize publicity and prevent re-opening old wounds.

The sale of Kacyznksi's property is undoubtedly a sensitive issue for everyone involved. Although the Unnamed Victims have legitimate reasons for not seeking restitution personally, the government nonetheless has an obligation to attempt to obtain funds for those who did. Our prior decision recognized this obligation and essentially directed that the property be either sold in a commercially reasonable manner to maximize the return for the restitution beneficiaries, or returned to Kaczynski. *Kaczynski III*, 416 F.3d at 977 & n.11. The government's proposal and the district court's order approving that Plan fully comply with our limited remand.

We note that even if the district court did not specifically solicit or mention the views of the Unnamed Victims, it did attempt to strike a balance between the competing considerations. The court hoped to minimize the undesirable impact of the sale by redacting the victims' names, other personal information, and descriptions of their injuries. *See Kaczynski IV*, 446 F. Supp. 2d at 1155 (discussing how redaction will protect privacy, the feelings and sensibilities of loved ones, and minimize the "painful conflict" of "profiting from the sale of materials that identify and discuss the injuries" of victims).

**[21]** We cannot say that the district court committed legal error or otherwise abused its discretion in approving the Plan. We therefore affirm the district court's order.

**AFFIRMED.**